HERMAN J. KUHLMANN, Plaintiff-Appellee and Cross-Appellant, *v.* BOARD OF TRUSTEES OF THE POLICE PENSION FUND OF MAYWOOD, Defendant-Appellant and Cross-Appellee.

First District (2nd Division)    No. 81-1881

Opinion filed May 11, 1982.

David M. Heisler, of Titel, Levy & Howlett, P. C., of Chicago, for appellant.

Richard F. McPartlin, of Chicago, for appellee.

PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Plaintiff Herman Kuhlmann, former police chief of Maywood, Illinois, brought this action for declaratory judgment to establish his pension rights under the Illinois Pension Code. Defendant in this suit is the Board of Trustees of the Police Pension Fund of Maywood, Illinois (the Board). The trial court found plaintiff entitled to a pension of 60% of the salary of the police chief for the year prior to October 27, 1980. The Board appeals, contending that plaintiff's pension should be based on his salary for the year prior to May 1968, when plaintiff began receiving a disability pension. Plaintiff cross-appeals, asserting that his pension should be 75% of the police chief's salary for 1980.

Plaintiff joined the Maywood police force on October 15, 1945. He rose through the ranks and was appointed chief of police in March 1967. In May 1968, plaintiff was injured in the line of duty and began receiving a disability pension of $486.71 per month. This pension was granted pursuant to section 3—114 of the Illinois Pension Code, which provided that a policeman who becomes disabled is entitled to a pension of one-half his salary for the year immediately prior to his retirement on disability. Ill. Rev. Stat. 1967, ch. 108½, par. 3—114 (repealed effective October 1, 1973).

Plaintiff attained age 50 on June 28, 1971. He then had the option, per section 3—114, to convert his disability pension to a regular pension. Section 3—114 provided, in part:

"If the disability continues for a period which, when added to his period of active service equals 20 years, the policeman shall, if he is age 50 and if he elects to then retire from the police force, be paid a regular pension in lieu of such disability pension." (Ill. Rev. Stat. 1971, ch. 108½, par. 3—114.)

The "regular pension" referred to in section 3—114 is the retirement pension provided for in section 3—111 of the Pension Code. That section provides, in part:

"Any policeman who has creditable service of 20 years or more and has reached age 50 and who is no longer in the service as a policeman, shall be entitled to a yearly pension equal to 1/2 of the salary attached to the rank he held on such police force for 1 year immediately prior to his retirement * * *." (Ill. Rev. Stat. 1971, ch. 108½, par. 3—111.)

Section 3—111 also provides for incremental increases in the pension rate (pension rates greater than 50% of the base period pay) for policemen who have more than 20 years of creditable service.

Although plaintiff reached age 50 in 1971, he did not elect to convert his disability pension to a retirement pension until October 27, 1980. Plaintiff contends, essentially, that he remained a member of the police force until October 1980, when he elected to retire, and that his pension should be based on the police chief's salary for the year prior to October 27, 1980. Plaintiff also maintains that his pension should be based on 35 years' service (1945 to 1980), a term of service that (under the present version of section 3—111, adopted in 1975) would entitle him to a pension equal to 75% of the base period salary.

The Board contends that plaintiff retired in 1968, not 1980, and that, in any event, section 3—114 should not be interpreted so as to permit a policeman on a disability pension to wait until well past the age of 50 and then claim a retirement pension based on the current salary for the policeman's former rank. The Board points to section 3—116.1 of the Pension Code, which replaced the repealed section 3—114. (See Ill. Rev. Stat. 1979, ch. 108½, par. 3—116.1 (effective October 1, 1973).) The two sections are comparable in that both allow a policeman who reaches the age of 50 while on disability to receive a retirement pension if his years of active service combined with his time on disability pension total 20 years. Section 3—116.1 specifies, however, that the electing policeman's retirement pension will be one-half of his salary on the date of his retirement on disability. (Ill. Rev. Stat. 1979, ch. 108½, par. 3—116.1) The Board argues that in this regard section 3—116.1 merely clarifies the intendment of section 3—114. The Board also argues that the result sought by plaintiff violates article VIII, section 1(a) of the Illinois Constitution, which prohibits the use of public funds for private purposes. See Ill. Const. 1970, art. VIII, sec. 1(a).

For the most part, the trial court accepted plaintiff's position. The court found plaintiff entitled to a pension based on the salary of the chief of police for the year prior to October 27, 1980, and the court stated that the annual pension should be 60% of that base period salary. The trial court arrived at the 60% figure by applying the incremental increase provision of section 3—111 that was in effect in 1971. That provision allowed a 1%

increase in pension rate for each year of service over 20 years, with a maximum rate of 60% of the base period pay. (See Ill. Rev. Stat. 1971, ch. 108½, par. 3—111.) In 1975, the incremental increase formula was revised to allow a 2% pension rate increase for each year of service over 20 years, up to 30 years, and a 1% rate increase for each year of service over 30 years, with a maximum rate of 75% of the base period pay. (Ill. Rev. Stat. 1975, ch. 108½, par. 3—111.) In his cross-appeal, plaintiff argues that he should be allowed the incremental increase provision in effect in 1980, the year he elected to "retire."

We find that three appellate court cases control the disposition of the Board's appeal. For the sake of clarity, we will review all three before considering their application to the instant case.

In *People ex rel. Anastasia v. Civil Service Com.* (1973), 10 Ill. App. 3d 583, 295 N.E.2d 127, the plaintiff was a policeman who took a disability pension in 1962 and requested to replace that pension with a retirement pension in 1969, pursuant to section 3—114 of the Pension Code. The trial court found the plaintiff entitled to a retirement pension based on one-half of the 1969 salary attached to his former rank. The appellate court affirmed, finding that a policeman who, per section 3—114, retires while on a disability pension may receive a retirement pension based on the salary for his rank for the year prior to his "regular" retirement. 10 Ill. App. 3d 583, 587.

In *Peifer v. Board of Trustees* (1976), 35 Ill. App. 3d 383, 342 N.E.2d 131, this court reaffirmed the *Anastasia* court's interpretation of section 3—114. The plaintiff in *Peifer* had, prior to the repeal of section 3—114, requested the pension board to convert his disability pension to a retirement pension. The defendant board waited until section 3—114 had been replaced by section 3—116.1 (effective October 1, 1973), and then offered a retirement pension based on the latter section. This court found that article XIII, section 5 of the Illinois Constitution creates an enforceable contractual right to pension benefits. (35 Ill. App. 3d 383, 386, citing Ill. Const. 1970, art. XIII, sec. 5 ("Membership in any pension or retirement system of the State * * * shall be an enforceable contractual relationship, the benefits of which shall not be diminished or impaired").) We held that the plaintiff was entitled to a retirement pension based on section 3—114 (35 Ill. App. 3d 383, 387), and noted that it would violate the constitutional protection of pension rights if the plaintiff were forced to accept the lower retirement benefit provided by section 3—116.1. 35 Ill. App. 3d 383, 388, citing Ill. Const. 1970, art. XIII, sec. 5.

The case of *Kraus v. Board of Trustees* (1979), 72 Ill. App. 3d 833, 390 N.E.2d 1281, expanded the constitutional analysis begun in *Peifer.* In *Kraus,* the plaintiff joined the police force in 1956, went on disability in 1967, and in 1976, at the age of 50, elected to convert his disability pension to a retirement pension pursuant to section 3—114. This court held that

the Illinois Constitution guarantees an employee's acquisition of vested contractual rights in the pension plan in effect when he becomes a member of the pension system. See 72 Ill. App. 3d 833, 848.

■■ In the case at bar, plaintiff joined the police force in 1945. The record does not reveal when he joined the pension system but, as we observed in *Kraus*, an employee's rights become fixed at the time he enters the system or at the time the constitutional provision becomes operative, whichever is later, but not at the time of retirement. (See *Kraus v. Board of Trustees* (1979), 72 Ill. App. 3d 833, 845 (citing with approval New York cases involving an identical issue).) The 1970 Illinois Constitution took effect on July 1, 1971. Plaintiff's rights in the pension system accordingly vested at that time.[1]

*Anastasia, Peifer* and *Kraus* fully answer the Board's claims on appeal. The Board argues that plaintiff seeks to "revive" a repealed statute, but *Peifer* and *Kraus* make clear that section 3—114 is the provision under which plaintiff's pension rights must be determined. The Board also argues that section 1(a) of article VIII of the Illinois Constitution (prohibiting the use of public funds for private purposes) will be violated if plaintiff is allowed a pension based on a 1980 salary rate although he stopped contributing to the pension system in 1968. In this connection, the Board cites *Ziebell v. Board of Trustees* (1979), 73 Ill. App. 3d 894, 392 N.E.2d 101. In *Ziebell*, the plaintiff was a police chief who retired with 26 years' service in 1973 but was not eligible for a regular pension until 1975, when he reached the age of 50. The incremental increase provision enacted in 1975 would have given Ziebell a pension of 62% of his base period salary. The prior incremental provision, in effect when Ziebell retired in 1973, allowed a pension of 56% of the base period salary. The appellate court noted that the 1975 increase in the increment formula was accompanied by an increase in the contribution policemen were required to make to the pension system. (73 Ill. App. 3d 894, 897-98.) Ziebell did not make these increased contributions and was therefore ineligible to benefit from the increased pension rate. The court held that Ziebell's receipt of a pension computed under the amended incremental increase provision would require an unconstitutional expenditure of public funds for private purposes. 73 Ill. App. 3d 894, 898, citing Ill. Const. 1970, art. VIII, sec. 1(a).

■■ ■ The holding in *Ziebell* is consistent with that in *Kraus*. The *Kraus* case states, in essence, that an employee acquires a contractual right to the benefits of the pension system in force when the employee enters the

---

[1] As noted in *Kraus*, "vesting" here refers to the plaintiff's acquisition of a contractual right to the benefits of the pension system. The other sense of "vesting," a meaning not here applicable, refers to an employee's entitlement to a retirement benefit after a specified period of service, pursuant to the provisions of the retirement plan. See *Kraus v. Board of Trustees* (1979), 72 Ill. App. 3d 833, 845.

system. The *Ziebell* case shows that an employee cannot, without the payment of additional consideration (*i.e.*, pension contributions), take the benefit of changes in the pension system enacted after he entered the system. Put another way, any alteration of the pension system amounts to a modification of an existing contract between the State (or one of its agencies) and all members of the pension system, whether employees or retirees. A member is contractually protected against a reduction in benefits. By the same token, a member cannot take advantage of a beneficial pension change without providing consideration for the contractual modification. This consideration most often takes the form of new or continued contributions to the pension system. There is no unconstitutional expenditure of public funds for private purposes when the State is contractually obligated to pay the amount in question. Under *Kraus*, the Board is obligated to give plaintiff the benefit of section 3—114. As interpreted in *Anastasia*, section 3—114 allowed plaintiff to retire in 1980 and receive a pension based on the police chief's salary for that year.

■■ The Board makes two other arguments that can be disposed of readily. The Board contends that to apply section 3—116.1 would not amount to a diminution of plaintiff's pension rights because section 3—116.1 merely clarifies what was the law under the repealed section 3—114. This contention is untenable in view of this court's holding in *Peifer* that the application of section 3—116.1 would result in a "drastic reduction" of Peifer's benefits under section 3—114. (*Peifer v. Board of Trustees* (1976), 35 Ill. App. 3d 383, 388.) The Board also argues that other provisions of the Pension Code are rendered meaningless or ambiguous if *Anastasia*'s interpretation of section 3—114 is given effect. The Board points to section 3—115 of the Pension Code, which requires annual medical examinations of policemen on disability pensions, but only to age 50. (Ill. Rev. Stat. 1971, ch. 108½, par. 3—115.) The Board asserts that no physical exam is required after age 50 because the policeman's pension is then fixed at one-half the salary earned in his last year of active service. Assuming, *arguendo*, that the Board's construction of section 3—114 would result in a fairer or more consistent pension plan, we nevertheless do not see how section 3—115 or other sections require the interpretation that the Board would give to section 3—114. Whether a statute is unwise is a legislative, not a judicial question. (*Moweaqua Coal Corp. v. Industrial Com.* (1935), 360 Ill. 194, 205, 195 N.E. 607.) The fact that a provision may be unwise does not make it ambiguous or meaningless.

■■ As noted above, the disposition of the Board's appeal is controlled by *Anastasia, Peifer* and *Kraus*. Plaintiff's cross-appeal presents an issue not treated in those cases. The issue in the cross-appeal, however, is readily resolved by the plain language of the statute and the court's opinion in *Ziebell*. Plaintiff contends that he elected to retire in 1980 and should

therefore be eligible for the incremental increase provision that was enacted in 1975. (See Ill. Rev. Stat. 1975, ch. 108½, par. 3—111.) The trial court found plaintiff entitled to the incremental increase provision in effect in 1971. (See Ill. Rev. Stat. 1971, ch. 108½, par. 3—111.) Under the *Ziebell* case, the trial court was correct in this regard. As noted above, plaintiff's pension rights were established in 1971, when the 1970 Illinois Constitution's protection of pension rights (Ill. Const. 1970, art. XIII, sec. 5) went into effect. The 1975 statutory amendment that increased the incremental rate provision does not apply to plaintiff, as he made no contribution to the pension system subsequent to his disability retirement in 1968. (See *Ziebell v. Board of Trustees* (1979), 73 Ill. App. 3d 894, 898.) Plaintiff is therefore entitled to the 1% annual increment schedule set forth in the earlier version of section 3—111. See Ill. Rev. Stat. 1971, ch. 108½, par. 3—111.

■■ The trial court erred, however, in finding plaintiff entitled to the maximum rate (60%) under the 1971 statute. An incremental increase in pension rates is awarded for each year of creditable service over 20 years. "Creditable service" is defined in section 3—110 of the Pension Code:

> " 'Creditable service' is the time served by a policeman as a member of a regularly constituted police force of a municipality. In computing creditable service * * * all periods of disability retirement for which a policeman has *not* received any disability pension payments under Section 3—114 of this Article shall be counted." (Emphasis added.) (Ill. Rev. Stat. 1971, ch. 108½, par. 3—110.)

The plain meaning of section 3—110 is that a pensioned period of disability is not creditable service. Section 3—114 specifically allows time on disability pension to be counted toward the 20 years of service needed for retirement but section 3—114 does not label such time "creditable service."

According to the statutory definition, plaintiff has 22 years of creditable service (October 1945 to May 1968). We find that plaintiff is entitled to a pension equal to 52% of his base period salary, that is, the police chief's salary for the year prior to October 27, 1980.

Plaintiff's action was for a declaratory judgment. The trial court erred only in computing the amount of incremental rate increase due plaintiff. The necessary modification is shown above. The judgment of the trial court is affirmed as modified.

Affirmed as modified.

PERLIN and HARTMAN, JJ., concur.