HAROLD REDDING, Plaintiff-Appellee, *v.* BOARD OF TRUSTEES OF
THE POLICE PENSION FUND OF THE VILLAGE OF OAK PARK,
Defendant-Appellant.

First District (3rd Division) No. 81—2176

Opinion filed March 30, 1983.—Rehearing denied June 30, 1983.

Klein, Thorpe & Jenkins, Ltd., of Chicago (Arthur C. Thorpe, of counsel), for appellant.

Richard F. McPartlin, of Chicago, for appellee.

JUSTICE McGILLICUDDY delivered the opinion of the court:

The plaintiff, Harold Redding, filed a complaint for *mandamus* in which he requested the defendant, Board of Trustees of the Police Pension Fund of the Village of Oak Park, Illinois (Board), to pay him a pension based upon the salary attached to his rank of patrolman for the year prior to his retirement in lieu of the disability pension he had been receiving since 1962. The trial court entered judgment on the pleadings in favor of the plaintiff, and the Board appeals.

The plaintiff joined the police force of the village of Oak Park on March 17, 1956. He subsequently was injured on duty and began receiving a disability pension in April 1962. On April 5, 1978, the plaintiff became 50 years of age. On January 28, 1981, he notified the Board that he elected to receive a regular pension pursuant to section 3—111 of the Illinois Pension Code. (Ill. Rev. Stat. 1979, ch. 108½, par. 3—111.) That section provided that a policeman who has creditable service of 20 years or more and has reached age 50 and who is no longer in the service as a policeman shall be entitled to a yearly pension equal to 50% of the salary attached to the rank he held on such police force for one year immediately prior to his retirement. Furthermore, the pension is increased for each additional year of the policeman's creditable service over 20 years. The plaintiff asserted that he was entitled to credit for 24 years of service in calculating the amount of his pension.

When the Board ignored plaintiff's request for a regular pension, the plaintiff filed his complaint for *mandamus.* In its answer the Board affirmatively alleged that the plaintiff retired on permanent disability on March 23, 1962, or in the alternative, on April 5, 1978 (his 50th birthday). Both parties filed motions for judgment on the

pleadings. The trial court entered judgment in favor of the plaintiff finding:

"under the provisions of former section 3—114 and section 3—111 of the Illinois Pension Code it is the duty of the defendant Board to pay plaintiff a regular pension in lieu of the disability pension he is receiving, said regular yearly retirement pension to be based upon 24 years of service and at the rate of 58% of the salary attached to the rank of patrolman for the year immediately prior to plaintiff's election to retire on January 28, 1981."

Before evaluating the Board's argument that this finding was erroneous, we will first discuss the applicable law concerning a policeman's pension.

Section 3—114 of the Illinois Pension Code provided:

"Whenever a policeman becomes physically or mentally disabled to an extent which necessitates the suspension of his duty on, or retirement from, the police force, he shall be paid a pension of ½ of the salary attached to his rank on the police force for 1 year immediately prior to the time of suspension of duty or retirement. Whenever disability ceases and the policeman resumes his police duty, the pension shall cease. If the disability continues for a period which, when added to his period of active service equals 20 years, the policeman shall, if he is age 50 and if he elects to then retire from the police force, be paid a regular pension in lieu of such disability pension." (Ill. Rev. Stat. 1971, ch. 108½, par. 3—114.)

In *People ex rel. Anastasia v. Civil Service Com.* (1973), 10 Ill. App. 3d 583, 295 N.E.2d 127, the appellate court held that this section clearly provided that a policeman who received disability payments and then elected to retire would receive a regular pension based on the salary attached to his rank for one year immediately prior to his retirement.

Subsequently, our legislature repealed section 3—114 (effective October 1, 1973) and replaced it with new sections that altered the amount a disabled policeman was entitled to receive upon electing to retire. (Ill. Rev. Stat. 1973, ch. 108½, pars. 3—114.1, 3—114.2, 3—116.1.) The appellate court discussed the effect of these amendments in *Peifer v. Board of Trustees* (1976), 35 Ill. App. 3d 383, 342 N.E.2d 131. In *Peifer* the plaintiff in May 1973 (prior to the effective date of the repeal of section 3—114) had requested the pension board to convert his disability pension to a retirement pension. In October 1973 the Board offered the plaintiff a pension based on the recent amend-

ments to the statute. The plaintiff filed a declaratory judgment action to determine his right to elect to retire pursuant to the provisions of section 3—114 and to be paid a regular pension under provisions of section 3—111. The trial court granted defendant's motion to dismiss. On appeal, this court held that the amendments could not be used to diminish the retirement benefits for which the plaintiff had become eligible under section 3—114. The court stated that to allow such a reduction would violate section 5 of article XIII of the 1970 Illinois Constitution (effective July 1, 1971), which provides:

"Membership in any pension or retirement system of the State, any unit of local government or school district, or any agency or instrumentality thereof, shall be an enforceable contractual relationship, the benefits of which shall not be diminished or impaired."

In *Kraus v. Board of Trustees* (1979), 72 Ill. App. 3d 833, 390 N.E.2d 1281, the court stated that section 5 of article XIII of the 1970 Illinois Constitution prohibits legislative action which directly diminishes the benefits to be received by those who became members of the pension system prior to the enactment of the legislation, though they were not eligible to retire. Thus, the police officer in *Kraus*, who joined the force in 1956, was placed on disability in 1967, and sought to retire in 1976, was entitled to receive a pension based on the relevant sections of the Pension Code in effect at the time the constitution became effective. See also *Kuhlmann v. Board of Trustees* (1982), 106 Ill. App. 3d 603, 435 N.E.2d 1307.

Applying this precedent to the facts in the instant case, we believe it is clear that the plaintiff, who joined the police force in 1956, has a clear legal right to receive a pension based on the pertinent sections of the Pension Code in effect in 1971 (the year the Constitution became effective).

The Board contends, however, that judgment on the pleadings was improper because a question of fact existed as to whether the plaintiff took a disability leave in 1962 or retired permanently on disability. It is the Board's position that if plaintiff retired on disability in 1962, he could not retire again in 1980 and receive a regular pension in lieu of a disability pension. In support of this argument the Board cites the following language from *People ex rel. Anastasia v. Civil Service Com.*:

"A policeman who becomes disabled and is suspended from active duty receives a disability pension based on the salary attached to his rank for one year immediately prior to his suspension from duty. A policeman who becomes disabled and retires

from the force receives a retirement pension based on the salary attached to his rank for one year immediately prior to his retirement. A policeman who receives disability payments and then elects to retire receives a regular pension (in lieu of his disability pension) based on the salary attached to his rank for one year immediately prior to his retirement." 10 Ill. App. 3d 583, 586-87.

■ We disagree with the Board's position that if the plaintiff retired on disability in 1962, he cannot now elect to retire and receive a regular pension. Admittedly, section 3—114 refers to both a "suspension" of duty on and a "retirement" from the police force because of a disability. However, an examination of the entire statute reveals that a policeman "retired" on disability has not permanently retired from the force. For example, section 3—115 provides that "[m]edical examination of a policeman retired for disability shall be made at least once each year prior to attainment of age 50, as a check of the continuance of disability for service as a policeman." (Ill. Rev. Stat. 1979, ch. 108½, par. 3—115.) In addition, section 3—116 provides that "[i]f any member of the police force who may be retired for disability *** who has been found upon medical examination to have recovered from disability, the Board shall certify to the chief of police that the member is no longer disabled and is able to resume the duties of his position." (Ill. Rev. Stat. 1979, ch. 108½, par. 3—116.) If the "retired" policeman's disability pension can be terminated upon a determination that he is no longer disabled, the policeman certainly has not permanently retired from the force. Thus, whether plaintiff's absence from the force is characterized as a disability leave or a retirement is irrelevant. He is now entitled to elect to retire permanently and to receive a regular pension in lieu of his disability pension.

Section 3—111 of the Illinois Pension Code established the method for calculating a regular pension (Ill. Rev. Stat. 1971, ch. 108½, par. 3—111): the policeman receives 50% of the salary attached to the rank he held for one year immediately prior to his retirement. The Board contends that the amount of the pension should be fixed at the time plaintiff became eligible for retirement at age 50 (April 5, 1978), not at the time plaintiff elected to retire (January 28, 1981). In support of this argument the Board relies on the following language in section 3—114:

"If the disability continues for a period which, when added to his period of active service equals 20 years, the policeman shall, if he is age 50 and if he elects to *then* retire from the police force be paid a regular pension in lieu of such disability pen-

sion." (Emphasis added.) Ill. Rev. Stat. 1971, ch. 108½, par. 3—114.

This argument was considered and rejected by this court in a second *Peifer* decision. (*Peifer v. Board of Trustees* (1978), 57 Ill. App. 3d 102, 372 N.E.2d 1106.) The court referred to the *Anastasia* decision which stated: "Nothing in the statute indicates that the regular pension (as opposed to a disability pension) paid an electing policeman is to be computed in a way different from the pension paid to any other retiring policeman." (10 Ill. App. 3d 583, 587.) The court concluded that to give effect to this legislative intent, it would treat the word "then" in section 3—114 as mere surplusage.

■ The Board urges us to reconsider this holding in light of a recent supreme court decision, *Arnold v. Board of Trustees* (1981), 84 Ill. 2d 57, 417 N.E.2d 1026. In *Arnold* the court stated that there is a strong presumption against finding statutory language to be mere "surplusage." (84 Ill. 2d 57, 62.) In *Arnold*, however, the court was discussing an interpretation of a three-paragraph provision which would render two paragraphs meaningless and superfluous. However, it is well established that if the main intent of the statute can be determined, words may be declared mere surplusage to give effect to the legislative intent. (*People v. Todd* (1975), 59 Ill. 2d 534, 322 N.E.2d 447.) We agree with the second *Peifer* decision that it was not the intent of the legislature to calculate a disabled policeman's retirement pension differently from the method used for any other retiring policeman.

The Board next contends that the trial court incorrectly found that the plaintiff was entitled to a length of service bonus. Pursuant to section 3—111, a pension is increased for each additional year of the policeman's creditable service over 20 years. (Ill. Rev. Stat. 1971, ch. 108½, par. 3—111.) Creditable service is defined as:

"the time served by a policeman as a member of a regularly constituted police force of a municipality. In computing creditable service *** all periods of disability retirement for which a policeman has *not* received any disability pension payments under Section 3—114 of this Article shall be counted." (Emphasis added.) Ill. Rev. Stat. 1971, ch. 108½, par. 3—110.

In *Kuhlmann v. Board of Trustees* (1982), 106 Ill. App. 3d 603, 435 N.E.2d 1307, the court held that the plain meaning of section 3—110 is that a pensioned period of disability is not creditable service. The court noted that although section 3—114 specifically allows time on disability pension to be counted toward the 20 years of service needed for retirement, it did not label such time "creditable service."

■ We agree with the holding in *Kuhlmann* and, therefore, modify the trial court's finding. We find that the plaintiff is entitled to a pension at the rate of 50% of the salary attached to the rank of patrolman for the year immediately prior to plaintiff's election to retire on January 28, 1981. The judgment order of the trial court is modified to reflect this amended finding.

■ Finally, the Board argues that the plaintiff was not entitled to a writ of *mandamus* because he did not have a clear legal right to all the relief requested in his complaint, *i.e.* the length of service bonus. We find no merit in this argument. Although plaintiff's complaint sought some relief the trial court could not grant, the remainder of his complaint was not rendered insufficient since he sought other relief to which he was clearly entitled. (See *McCoy v. Stackler* (1976), 38 Ill. App. 3d 1012, 350 N.E.2d 197.) As we have previously discussed, the plaintiff possessed a clear legal right to receive a retirement pension in lieu of his disability pension.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed as modified.

Affirmed as modified.

McNAMARA, P.J., and WHITE, J., concur.