DONALD G. FENTON, Plaintiff-Appellee and Cross-Appellant, v. BOARD OF TRUSTEES OF THE CITY OF MURPHYSBORO *et al.*, Defendants-Appellants and Cross-Appellees.

Fifth District   No. 5—89—0224

Opinion filed August 14, 1990.

Thomas H. Jones, City Attorney, of Murphysboro, for appellants.

Michael F. Dahlen and Brad A. Elward, both of Feirich, Schoen, Mager & Green, of Carbondale, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

On or about February 28, 1985, Donald Fenton, a police officer with the City of Murphysboro, submitted a letter of resignation notifying the Murphysboro police department (hereinafter department) of his resignation effective March 31, 1985. On March 1, 1985, Fenton became a full-time salaried employee of Burns International Detective Agency. On March 18, 1985, Fenton was involved in an automobile accident, sustaining disabling injuries. He has received temporary total disability from Burns International Detective Agency. Donald Fenton applied to the City of Murphysboro Police Pension Board of Trustees (hereinafter Board) for disability benefits pursuant to the Illinois Pension Code (Ill. Rev. Stat. 1989, ch. 108½, par. 1—101 *et seq.*). A hearing was conducted before the Board, which ruled that Fenton was not a police officer in the employ of the Murphysboro police department at the time of the accident and was not eligible for disability benefits. Fenton's application for disability benefits was denied.

Fenton filed a complaint for administrative review in the circuit court. He sought a reversal of the Board's decision, and in addition sought prejudgment interest on the amount claimed due. On March 17, 1989, the court entered an order finding the decision of the Board to be against the manifest weight of the evidence. The court also ordered that disability payments be paid to Fenton without reduction for workers' compensation payments. The request for prejudgment interest was denied.

Both parties appeal from the circuit court's order. The defendants contend that the court's determination is against the manifest weight of the evidence. Donald Fenton appeals from the court's decision not to award prejudgment interest.

■ Upon administrative review, the function of both the trial court and the appellate court is limited to determining whether the findings and conclusions of the administrative agency are against the manifest weight of the evidence. (*Eastman Kodak Co. v. Fair Employment Practices Comm'n* (1981), 86 Ill. 2d 60, 76, 426 N.E.2d 877, 884; *Starnawski v. License Appeal Comm'n* (1981), 101 Ill. App. 3d

1050, 1058-59, 428 N.E.2d 1102, 1109.) After reviewing the record, we affirm the circuit court's decision finding the Board's determination to be against the manifest weight of the evidence.

First we agree with the trial court's ruling that the Board's determination that Fenton was not a police officer with the Murphysboro police department at the time of his injury was against the manifest weight of the evidence.

Defendants contend that any finding that Fenton was on duty with the police force when he was injured is illusory. Defendants rely on *Hahn v. Police Pension Fund* (1985), 138 Ill. App. 3d 206, 485 N.E.2d 871, *appeal denied* (1986), 111 Ill. 2d 581, as support for their position that Fenton did not specifically preserve his rights to the pension prior to or at the time of his resignation, thereby relinquishing his status as a police officer. Defendants cite the Board's findings of fact as significant evidence of Fenton's relinquishment of his rights to the pension: (1) that as of March 1, 1985, Fenton became a full-time salaried employee with Burns International Detective Agency; (2) that upon taking the job with Burns International Detective Agency, Fenton failed to provide the police department with a method by which the department could contact him; and (3) that prior to his automobile accident, Fenton had turned in all equipment issued to him by the police department including his uniforms. Defendants also note that Fenton had requested in writing that his contributions to the Murphysboro police department pension fund be returned to him. These facts, along with other evidence presented at the hearing, defendants argue, clearly prove that Fenton was not a police officer with the department at the time of his injury.

Just as *Hahn* found that plaintiff preserved his rights in his resignation, we find that plaintiff herein preserved his rights and that he maintained his status as a police officer at the time of his injury. The evidence in this case consisted of the testimony of the claimant, members of the police force, the city treasurer, and Norma Stanton, the widow of the district manager of Burns International Detective Agency. Donald Fenton testified that although he turned in his police equipment on March 15, 1985, he spoke with Chief of Police Tincher regarding his willingness to be called back to work with the police force in the event of an emergency. It was Fenton's understanding that he was subject to being called back at any time until the effective date of his resignation, March 31, 1985. Fenton testified that he had made arrangements with his new employer which would permit him to leave his job at any time in the event he was called back to serve with the police force.

Norma Stanton confirmed Fenton's testimony that Fenton had discussed the possibility of being called back with her husband Jim, who is now deceased, but who was at that time district manager of the agency and who was going to be Fenton's supervisor. Stanton testified that in February of 1985 she and her husband met with Fenton, and that Fenton made it very clear to Jim at that time that if he were called to the police department he would have to go back.

Police officers Graeff and Eovaldi each testified that in late February or early March of 1985, Chief of Police Tincher advised them that Fenton had resigned effective March 31, 1985. Officer Graeff testified that Tincher explained to Eovaldi and himself that Fenton was advised that if the need arose he would be subject to call-back. Officer Eovaldi testified that he recalls Tincher saying that Fenton would be subject to call-back.

Chief of Police Tincher testified that he did not recall any discussion with Fenton regarding a call-back situation. Tincher explained, "the fact that I would not have known where to contact him would tend to negate that." The chief of police did acknowledge, however, that Fenton did not tell him that he would not work if he were called back.

Evidence was presented by the city treasurer, Jim Chambers, as to paychecks issued to Fenton during March 1985. He testified that Fenton received a check on March 15, 1985, and one on March 29, 1985, each representing pay for personal days and vacation pay. Chambers testified that all deductions had been taken from those checks, including deductions for the police pension fund. He testified that he "had nothing written for Mr. Fenton as to what he wanted to do with his particular money that was in there *** so I was required to *** take those out as pension amounts."

■■■ Section 3—114.2 of the Illinois Pension Code provides:

"A police officer who becomes disabled as a result of any cause other than the performance of an act of duty, and who is found to be physically or mentally disabled so as to render necessary his or her suspension or retirement from police service in the police department, shall be entitled to a disability pension ***." (Ill. Rev. Stat. 1989, ch. 108½, par. 3—114.2.)

"Police officer" is defined as:

"Any person who (1) is appointed to the police force of a police department and sworn and commissioned to perform police duties; (2) is found upon examination of a duly licensed physician or physicians selected by the board to be physically and mentally fit to perform the duties of a police officer; and (3)

within 3 months after receiving his or her first appointment, and if reappointed, within 3 months thereafter, makes written application to the board to come under the provisions of this Article." (Ill. Rev. Stat. 1989, ch. 108½, par. 3—106.) The primary rule of statutory construction is that the court must ascertain and give effect to the intent of the legislature. (*People v. Robinson* (1982), 89 Ill. 2d 469, 475, 433 N.E.2d 674, 677.) When construing a statute, the court should look first to the language of the statute (*Robinson*, 89 Ill. 2d at 475, 433 N.E.2d at 677), giving the terms their plain and ordinary meaning (*People v. Steppan* (1985), 105 Ill. 2d 310, 317, 473 N.E.2d 1300, 1304). We also note that it is well established that the rules governing police and firemen's pensions are to be liberally construed in favor of those to be benefited. (*Hahn*, 138 Ill. App. 3d at 211, 485 N.E.2d at 875.) There being no indication in the Pension Code that the term "police officer" is to be construed narrowly, we interpret the words "police officer" to mean a person who occupied the position of Donald Fenton at the time of his injury. See *Freberg v. Board of Trustees* (1970), 128 Ill. App. 2d 369, 374, 262 N.E.2d 22, 25.

We are unpersuaded by defendants' argument that Fenton was not on call-back status with the department and, therefore, was not a police officer with the department at the time of his injury. Upon review of the evidence, we see that the sole witness to testify that Fenton was not on call-back status was Chief of Police Tincher. We find it significant that Tincher did not testify that he had never had a discussion with Fenton regarding a call-back situation, but rather that he could not recall having such a discussion with Fenton. We also note that Tincher testified that Fenton at no time told him that he would not return to the department if called back. In light of the evidence we agree with the circuit court's determination that the Board's finding that Fenton was not a police officer at the time of his injury was against the manifest weight of the evidence.

Defendants also argue that Fenton's immediate undertaking of other full-time employment and his request for the return of his pension contributions show his intent to sever his employment with the department prior to his injury. Defendants maintain that section 3—114.2 requires that there be a causal relationship between the disability and the retirement from police service in order to qualify for pension benefits; that the claimant actually retire or be suspended because of his injury. We do not believe that section 3—114.2 imposes such a requirement.

■ According to section 3—114.2, the police officer must be

"found to be physically or mentally disabled so as to render necessary his or her suspension or retirement from police service in the police department." In this case the extent of Fenton's injuries was stipulated to by the parties as being serious and disabling. The parties further stipulated that the physicians who treated Fenton are of the opinion that the paraplegia resulting from the accident is a permanent and totally disabling condition. While Fenton's disability is not contested, defendants argue that the statutory language, "so as to render necessary his or her suspension or retirement," mandates that but for the disability, the claimant intended to return to police service. We find no such restriction in the statute. Indeed, the statute requires only that the claimant be an officer at the time of the injury, which we have already shown was the situation here. The liberal construction to be accorded the pension provisions and the beneficent policy behind the disability pension program guide our determination that this statutory language merely indicates the degree of physical impairment necessary in order to qualify for a disability pension. (See *Hahn*, 138 Ill. App. 3d at 212-13, 485 N.E.2d at 876.) There is no dispute that Fenton would have had to retire from police service as a result of his injuries. Furthermore, there is no significant disagreement about the fact that had plaintiff been on full-time active duty with the department at the time of his injuries and had he not tendered an early resignation notice, he would have been entitled to a disability pension. Simply because he tendered a resignation and accepted employment elsewhere prior to the onslaught of his disability is no reason to deny him the right to a disability pension. The statute does not mandate such treatment, and we will not impose such a restriction.

In *Hahn*, the court found the fact that the claimant had applied for his pension prior to resigning was sufficient to show that he did not intend to relinquish his rights to the pension. We are not convinced that the factual circumstances of the instant case warrant adopting a different rule as to Fenton. It is clear that Fenton did not resign with the expectation of severing all of the benefits of his pension. *Hahn*, 138 Ill. App. 3d at 212, 485 N.E.2d at 875.

Defendants argue that Fenton obviously intended to sever all ties with the department because he immediately took on full-time employment elsewhere. Without reiterating the testimony elicited at the hearing, we believe the evidence establishes that Fenton was subject to call-back with the department. Defendants also argue that Fenton's request for reimbursement of his pension fund contributions indicates that he intended to terminate his rights to a disability pension prior

to the effective date of his resignation. We disagree. The city treasurer testified that he had received nothing in writing as to what Fenton desired to do with the amounts to be reimbursed; therefore, pension deductions were taken from Fenton's paychecks, including the last check Fenton received on March 29, 1985. Additionally, it is undisputed that Fenton's resignation was not effective until March 31, 1985. The accident giving rise to his injuries occurred prior to the effective date of his resignation. Under these circumstances, we find that Fenton did intend to maintain his rights to the pension until the effective date of his retirement.

The next issue on appeal is whether the trial court's order awarding disability benefits without a reduction for payments received under the Workers' Compensation Act (Ill. Rev. Stat. 1989, ch. 48, par. 138.1 *et seq.*) is error.

■ The Illinois Constitution provides:

"Membership in any pension or retirement system of the State, any unit of local government *** shall be an enforceable contractual relationship, the benefits of which shall not be diminished or impaired." (Ill. Const. 1970, art. XIII, §5.)

An employee's rights in the system vest either at the time he enters the system or in 1971 when the 1970 Constitution became effective, whichever is later. (*Kraus v. Board of Trustees* (1979), 72 Ill. App. 3d 833, 390 N.E.2d 1281.) Plaintiff was initially employed with the Murphysboro police department in 1970; therefore, his rights in the pension system vested on July 1, 1971, the effective date of the 1970 Constitution.

At the time of vesting, Fenton's pension rights were limited by section 1(b)(1) of the Workmen's Compensation Act, which provided that a governmental employee's pension benefits must be reduced by the amount of money received under the Workmen's Compensation Act (Ill. Rev. Stat. 1971, ch. 48, par. 138.1(b)(1)). In 1974 this provision was repealed. In 1977, section 3—151 was added to the Illinois Pension Code, permitting the reduction of police pension disability benefits by amounts received under the Workmen's Compensation Act. (Ill. Rev. Stat. 1977, ch. 108½, par. 3—151.) This section was also repealed (Pub. Act 83—1440, eff. January 1, 1985); however, its provisions were reenacted in section 3—114.5 of the Illinois Pension Code (Ill. Rev. Stat. 1985, ch. 108½, par. 3—114.5).

Plaintiff contends that the continued contributions made by him throughout his term of employment with the Murphysboro police department resulted in the vesting of additional rights in his pension. Plaintiff further maintains that the repeal in 1977, of the provision

permitting the diminution of disability benefits by the amount of workers' compensation benefits received, resulted in an additional pension benefit which could not be divested upon enactment of a statute allowing for a similar reduction in disability benefits. Plaintiff cites cases from three districts as support for his position.

In the first district case of *Gualano v. City of Des Plaines* (1985), 139 Ill. App. 3d 456, 487 N.E.2d 1050, the plaintiff continued to contribute to his pension fund after the reduction provision was repealed. The court there found that the continued contributions resulted in the vesting of an additional pension benefit. The court also held that reenactment of a reduction provision could not constitutionally diminish plaintiff's vested rights.

The second district in *Taft v. Board of Trustees* (1985), 133 Ill. App. 3d 566, 572, 479 N.E.2d 31, 35, held that where an employee's benefits are increased under a pension system, such rights may vest as to an employee who provides additional consideration for the contractual modification. This additional consideration can take the form of new or continued contributions to the pension system. *Taft*, 133 Ill. App. 3d at 572, 479 N.E.2d at 35.

The most recent decision involving the issue at bar is the third district case of *Carr v. Board of Trustees* (1987), 158 Ill. App. 3d 7, 511 N.E.2d 142. William Carr began his employment with the police department in 1965. He was injured in 1983 and sought disability benefits through his pension system. The board of trustees of the police pension fund offset plaintiff's pension benefits by the amount of workers' compensation benefits plaintiff received. The trial court found that the board had wrongfully modified plaintiff's pension benefits. The appellate court in *Carr* adopted the reasoning of both *Gualano* and *Taft*, and held that because of the plaintiff's continued contributions to his pension fund, plaintiff acquired an additional pension benefit, which could not be reduced by the amount of plaintiff's workers' compensation award.

In the instant case, the parties do not dispute that plaintiff continued to contribute to the pension fund following the repeal of the reduction provision of section 1(b)(1) of the Workmen's Compensation Act. We concur with the reasoning of *Gualano*, *Taft* and *Carr*, insofar as those cases held that repeal of the reduction provision resulted in the vesting of an additional pension benefit which could not constitutionally be divested. We find that the trial court's decision not to reduce plaintiff's disability award by the amount of workers' compensation benefits received was proper.

The final issue on appeal is raised by the plaintiff. He claims

the trial court erred in not awarding prejudgment interest. Absent an express agreement between the parties, allowance of interest depends upon statutory authority. (See *Pinkstaff v. Pennsylvania R.R. Co.* (1964), 31 Ill. 2d 518, 522, 202 N.E.2d 512, 514.) Fenton argues that he is entitled to prejudgment interest pursuant to section 2 of the Interest Act (Ill. Rev. Stat. 1989, ch. 17, par. 6402). He contends that the police pension fund agreement is an instrument of writing as is required by the statute. Fenton also argues that the amount due is fixed or readily ascertainable, thereby satisfying the requirements for the allowance of prejudgment interest. See *Cushman & Wakefield of Illinois, Inc. v. Northbrook 500 Limited Partnership* (1983), 112 Ill. App. 3d 951, 963, 445 N.E.2d 1313, 1321.

The interest statute provides:

"[C]reditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing ***." (Ill. Rev. Stat. 1989, ch. 17, par. 6402.)

Each of the categories of bonds, bills and promissory notes specified has the legal attribute of creating an indebtedness. The phrase "or other instrument of writing" should thus be construed under *ejusdem generis* to refer only to other similar writings possessing this same legal attribute. (*Hamilton v. American Gage & Machine Corp.* (1976), 35 Ill. App. 3d 845, 853, 342 N.E.2d 758, 765.) However, the phrase "other instruments of writing" has been construed to include building or construction contracts (*E.M. Melahn Construction Co. v. Village of Carpentersville* (1981), 100 Ill. App. 3d 544, 427 N.E.2d 181), insurance policies (*Ervin v. Sears, Roebuck & Co.* (1984), 127 Ill. App. 3d 982, 469 N.E.2d 243), real estate listing contracts (*Hammel v. Ruby* (1985), 139 Ill. App. 3d 241, 487 N.E.2d 409), and leases (*Montgomery Ward & Co. v. Wetzel* (1981), 98 Ill. App. 3d 243, 423 N.E.2d 1170). Our research has not revealed any Illinois case, however, where a pension was sought to be included under the statutory phrase "other instruments of writing."

■■ The police pension fund here is a statutorily mandated creation and is administered according to legislatively prescribed terms and conditions. (See Ill. Rev. Stat. 1989, ch. 108½, par. 3—101.) The terms and conditions of the pension fund are *written* in the Illinois Pension Code. Construction contracts, insurance policies, real estate listing contracts and leases are no more like bonds, bills or promissory notes than is the pension agreement, in that they all are writings creating an indebtedness. We find, therefore, that the pension agreement is an "other instrument of writing" under the interest statute.

■■ The date on which Fenton's pension became due and owing was March 31, 1985, the effective date of retirement. (Ill. Rev. Stat. 1989, ch. 108½, par. 3—114.2.) The specific dollar amount due Fenton under the pension agreement is prescribed by statute. (See Ill. Rev. Stat. 1989, ch. 108½, par. 3—101 *et seq.*) Since the principal amount due Fenton is readily ascertainable, the amount of prejudgment interest due in this case is readily ascertainable. Accordingly, Fenton is entitled to prejudgment interest on all amounts due under the pension fund agreement.

For the foregoing reasons, the judgment of the circuit court finding that the plaintiff was a police officer at the time of his injury and that he was entitled to disability pension benefits without reduction for amounts received under the Workers' Compensation Act is affirmed. The circuit court's decision denying prejudgment interest is reversed, and we remand with instructions to enter an order awarding prejudgment interest as herein specified.

Affirmed in part; reversed in part and remanded.

RARICK and WELCH, JJ., concur.