JAMES SCHROEDER, Plaintiff-Appellant, v. MORTON GROVE POLICE PENSION BOARD *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—90—1297

Opinion filed September 9, 1991.

Odelson & Sterk, Ltd., of Evergreen Park (Mark H. Sterk, Burton S. Odelson, and Keri-Lyn J. Krafthefer, of counsel), for appellant.

Puchalski, Keenan & Reimer, of Chicago (Richard J. Puchalski, of counsel), for appellees.

JUSTICE O'CONNOR delivered the opinion of the court:

James Schroeder appeals from the trial court's order that granted the pension board summary judgment.

On June 3, 1973, Schroeder joined the Morton Grove police department and began making contributions to the pension fund. He continued to make contributions to the pension fund throughout his employment. On or about July 16, 1983, while on duty as a police officer, Schroeder was injured, leaving him mentally disabled. Subsequently, on July 26, 1984, the pension board awarded Schroeder a duty-related disability pension. Shortly thereafter, Schroeder filed a workers' compensation claim against the Village of Morton Grove with the Illinois Industrial Commission pursuant to the Workers' Com-

pensation Act (Act) (Ill. Rev. Stat. 1983, ch. 48, par. 138.1 *et seq.*) seeking compensation for the same injury. On May 13, 1988, the Industrial Commission approved a settlement between the parties for a lump sum of $89,500. After settling the workers' compensation claim, the pension board rendered an administrative decision and order. Pursuant to section 3—114.5 of the Pension Code (Ill. Rev. Stat. 1987, ch. 108½, par. 3—114.5), the pension board reduced Schroeder's disability pension by the amount of the settlement under the Workers' Compensation Act.

In 1973, the Workmens' Compensation Act provided for a reduction in pension benefits by amounts received as workers' compensation (Ill. Rev. Stat. 1973, ch. 48, par. 138.1(b)(1)). Section 1(b)(1) of the Workmens' Compensation Act provided:

> "[An employee] who is *** or shall be entitled to receive a pension or benefit for or on account of disability or death arising out of or in the course of his employment from a pension or benefit fund to which the State or any county, town, township, incorporated village, school district, body politic, underwriters' fire patrol or municipal corporation therein is a contributor, in whole or in part, is entitled to receive only such part of such pension or benefit as is in excess of the amount of compensation recovered and received by such employee *** under this Act." (Ill. Rev. Stat. 1973, ch. 48, par. 138.1(b)(1).)

However, effective October 1, 1974, section 1(b)(1) of the Workmens' Compensation Act was repealed. In 1977, the Pension Code was amended to include section 3—151, which provided that pension disability should be reduced by the amounts received in a claim pursuant to the Act. (Ill. Rev. Stat. 1977, ch. 108½, par. 3—151.) Then, on January 1, 1985, section 3—151 was repealed and recodified verbatim in section 3—114.5 of the Pension Code.

On November 15, 1988, Schroeder filed a two-count complaint against the pension board and its five members in the United States District Court for the Northern District of Illinois. Count I alleged that reduction of his pension rights violated his right to procedural due process under 42 U.S.C. section 1983 (1988), and count II requested review of the pension board's decision to reduce his disability payments. After a lengthy discussion only with respect to whether Schroeder was denied due process, the district court captioned the following as its conclusion:

> "The Pension Board acted according to the Illinois statute which requires adjustment of pension benefits to reflect workmen's compensation awards. A review of Illinois case law indi-

cates that the Pension Board correctly interpreted its authority under the statute. *Sellard v. Board of Trustees*, 478 N.E.2d 1123[.] *** *Mathews* indicates that in this type of case a pre-termination hearing is not constitutionally necessary. Section 3—148 of [the] Illinois Pension Code provides specific redress by which plaintiff can be made whole. *See Gualano v. City of Des Plaines*, 487 N.E.2d 1050 (Ill. App. 1985). Adequate state remedies are available and plaintiff has failed to exhaust these remedies or claim that the state remedial scheme violates due process. Plaintiff's complaint is dismissed."

Thereafter, on April 28, 1989, Schroeder filed a complaint for administrative review in the circuit court of Cook County. Subsequently, Schroeder and the pension board filed their respective motions for summary judgment. On May 4, 1990, the circuit court granted the pension board summary judgment. Schroeder appeals.

■■ Initially, we reject the pension board's argument that Schroeder's State court complaint is barred by the doctrine of *res judicata* because his Federal court complaint was "virtually identical" and was dismissed. However, the district court's language that "[a]dequate state remedies are available and plaintiff has failed to exhaust these remedies" suggests that the court did not dismiss the case on its merits. Thus, this court may review Schroeder's appeal on its merits.

■ Section 5 of article XIII of the 1970 Illinois Constitution provides that membership in a pension system of any local governmental unit in the State is "an enforceable contractual relationship, the benefits of which shall not be diminished or impaired." (Ill. Const. 1970, art. XIII, §5.) An employee's rights in the system vest, either at the time he enters the system, *e.g.*, making contributions, or in 1971 when the 1970 Constitution became effective, whichever is later. *Gualano v. City of Des Plaines* (1985), 139 Ill. App. 3d 456, 458, 487 N.E.2d 1050, citing *Kraus v. Board of Trustees of the Police Pension Fund* (1979), 72 Ill. App. 3d 833, 390 N.E.2d 1281.

■■ Vesting is defined in a contractual sense. (*Gualano*, 139 Ill. App. 3d at 458.) The "contractual relationship" between the State and the employee is formed and governed by the actual terms of the contract or pension at the time the employee initially contributes to the system. (*Kraus v. Board of Trustees of the Police Pension Fund* (1979), 72 Ill. App. 3d 833, 390 N.E.2d 1281.) The law which exists at the time of the contract formation is deemed to be a part of the contract as though it was expressly referred to or incorporated into it.

*Taft v. Board of Trustees of the Police Pension Fund* (1985), 133 Ill. App. 3d 566, 479 N.E.2d 31.

■■ Based upon this division's decision in *Gualano v. City of Des Plaines* (1985), 139 Ill. App. 3d 456, 487 N.E.2d 1050, Schroeder argues that his pension should not have been reduced by the settlement amount. We agree. In *Gualano*, plaintiff Gualano joined the Des Plaines fire department in 1967. When he joined the fire department, he began contributing to the pension fund, and he continued to so contribute following the elimination of section 1(b)(1) of the Workers' Compensation Act. As a consequence of Gualano's continued contributions after section 1(b)(1) was eliminated, this court found that Gualano's contractual rights were modified and resulted in the vesting of an additional pension benefit. Following that rationale, this court determined that the subsequent enactment of a section in the Pension Code which reinstated the reduction provision could not constitutionally diminish his vested rights. Thus, the panel held that Gualano's pension benefits could not be reduced by the amount of his award pursuant to the Act.

The *Gualano* panel chose to follow the second district in *Taft v. Board of Trustees of the Police Pension Fund* (1985), 133 Ill. App. 3d 566, 479 N.E.2d 31. The *Taft* court held that plaintiff Taft's continued contributions to his pension fund after the repeal of the reduction provision of the Workers' Compensation Act increased his pension benefits and constituted the vesting of an additional right. The *Taft* court stated that "where a pension system *increases an employee's benefits,* the employee can take advantage of a *beneficial* pension change where he provides consideration for the contractual modification, most often taking the form of new or continued [(emphasis omitted)] contributions to the pension system." (Emphasis added.) (*Taft*, 133 Ill. App. 3d at 572, 479 N.E.2d at 35, citing *Kuhlmann v. Board of Trustees of the Police Pension Fund* (1982), 106 Ill. App. 3d 603, 607-08.) The *Taft* court found *Kuhlmann v. Board of Trustees of the Police Pension Fund* (1982), 106 Ill. App. 3d 603, 435 N.E.2d 1307, instructive. In *Kuhlmann*, the court held that an employee cannot, without the payment of additional consideration (*i.e.*, pension contributions), take the *benefit* of changes in the pension system enacted after he entered the system. *Kulhmann*, 106 Ill. App. 3d at 608.

When the *Gualano* panel chose to follow *Taft*, it rejected *Sellards v. Board of Trustees of the Rolling Meadows Firemen's Pension Fund* (1985), 133 Ill. App. 3d 415, 478 N.E.2d 1123. We also reject *Sellards*, despite the pension board's reliance thereon. In *Sellards*, another panel from the first district rejected the argument that an employee's

pension rights were increased by the elimination of section 1(b)(1) (Ill. Rev. Stat. 1973, ch. 48, par. 138.1(b)(1)), stating that an employee's pension rights are fixed at the time of vesting and "[t]he Constitution does not provide that a person has a vested right in any *beneficial* changes in a pension system." (Emphasis added.) *Sellards v. Board of Trustees of the Rolling Meadows Firemen's Pension Fund* (1985), 133 Ill. App. 3d 415, 417, 478 N.E.2d 1123, 1125.

The third district in *Carr v. Board of Trustees of the Police Pension Fund* (1987), 158 Ill. App. 3d 7, 511 N.E.2d 142, also adopted the reasoning of *Gualano* and *Taft*. Thereafter, the fifth district in *Fenton v. Board of Trustees* (1990), 203 Ill. App. 3d 714, 561 N.E.2d 105, relied upon *Gualano, Taft* and *Carr*. The *Carr* and *Fenton* courts held that the plaintiffs acquired an additional pension benefit which could not be reduced by the amount of the plaintiffs' awards pursuant to the Act because the plaintiffs continued contributing to their respective pension funds following the repeal of section 1(b)(1).

In short, we follow the *Gualano, Taft, Carr* and *Fenton* rationale. Accordingly, Schroeder's pension disability should not be reduced by the amount of his workers' compensation settlement because he contributed to his pension fund before, during and after the repeal of section 1(b)(1) of the Act. Those contributions created an additional vested contract right which cannot constitutionally be diminished or impaired.

Based upon the foregoing, the case is reversed and remanded. Thus, we need not address Schroeder's argument that the pension board violated his due process rights when the board reduced his disability pension without notice or hearing.

Reversed and remanded.

MANNING, P.J., and BUCKLEY, J., concur.