LEE P. HANNIGAN, Plaintiff-Appellee, v. DONALD E. HOFFMEISTER, Indiv. and as Executive Director of the State Universities Retirement System of Illinois, Defendant-Appellant (Board of Trustees of the University Retirement System, Defendant-Appellant).

First District (6th Division) Nos. 1—90—3299, 1—91—1799 cons.

Opinion filed December 30, 1992.

Roland W. Burris, Attorney General, of Springfield (Robert G. Toews, Assistant Attorney General, of Chicago, of counsel), for appellants.

Thomas G. King, of Chicago, for appellee.

PRESIDING JUSTICE EGAN delivered the opinion of the court:

The plaintiff, Lee Hannigan, filed a petition in *mandamus* seeking an order on the defendant, Donald Hoffmeister, the Executive Director of the State Universities Retirement System of Illinois (Retirement System) to process the plaintiff's application for retirement benefits. The defendant filed a counterclaim. The judge first entered partial summary judgment in favor of the plaintiff and later dismissed the counterclaim. Hoffmeister appeals from that order dismissing the counterclaim.

The plaintiff later filed a count for administrative review of an order of the defendant Board of Trustees of the Universities Retirement System (the Board) withholding retirement benefits from the plaintiff until the plaintiff paid back sums of money the Retirement System had paid to him as disability benefits. The judge entered summary judgment for the plaintiff and against the Board. The Board appeals from that decision. Both appeals center on the construction of section 15–153.1(c) of the Illinois Pension Code (Ill. Rev. Stat. 1989, ch. 108½, par. 15–153.1(c)).

The plaintiff, a 57-year-old plumber employed by the University of Illinois, suffered a head injury while at work on July 30, 1979. He was off work for approximately 210 weeks and returned to work on August 8, 1983. When he first applied for disability benefits in March 1980, his application contained an agreement which stated that he planned to file a workers' compensation claim and that if he qualified for workers' compensation payments he would reimburse the Retirement System for the full amount of the overpayment of disability benefits. The agreement provided that the consideration for the agreement was the plaintiff's reception of disability benefits before the expiration of the filing period for a workers' compensation claim.

During the period he was off work, the plaintiff received $49,267.48 in disability benefits from the Retirement System. He worked until October 3, 1983, at which time he was released from work because he was dizzy and unable to work. He has not worked since. Between December 4, 1983, and December 31, 1987, the plaintiff received $72,310.50 in disability benefits from the Retirement System. In that four-year period he was examined by a number of physicians. He was depressed, had limited psycho-motor tones and had difficulty hearing. He was diagnosed as having cognitive deficiencies and signs of a personality disturbance which apparently were the result of the head injury he had suffered while on duty. The condition was considered permanent.

Although it is unclear from the record, the plaintiff was apparently denied workers' compensation benefits by his employer, the University of Illinois, which required him to file an application for benefits before the Illinois Industrial Commission.

On December 30, 1985, an arbitrator of the Illinois Industrial Commission entered a decision for the plaintiff. The arbitrator found that the plaintiff had suffered permanent brain damage and was "totally disabled." On November 10, 1987, the arbitrator's decision was affirmed by the Industrial Commission, which adopted the arbitrator's decision that the plaintiff was "totally disabled" beginning on October 3, 1983, under section 8(f) of the Workers' Compensation Act. (Ill. Rev. Stat. 1985, ch. 48, par. 138.8(f).) On December 24, 1987, the Board of Trustees of the Retirement System asked the plaintiff to reimburse the Retirement System for the disability benefit payment of $121,577.98. About January 1, 1988, the University of Illinois issued a check to the plaintiff in the sum of $151,510.62 for his workers' compensation claim.

In March 1989 the plaintiff filed an application for a retirement annuity with the defendant, Donald E. Hoffmeister, the Executive Director of the Retirement System, requesting that the plaintiff's retirement begin on May 1, 1989. The plaintiff was certified as a participant of the Retirement System effective as of December 1, 1952. Hoffmeister refused to process the plaintiff's application until the previous payments of disability were repaid by the plaintiff.

On June 20, 1989, the plaintiff filed a complaint in *mandamus* seeking an order on Hoffmeister to process the plaintiff's retirement application. Hoffmeister filed an answer and counterclaim. The counterclaim alleged that the plaintiff had received disability benefits from the Retirement System totalling $121,577.98 for the period between March 2, 1980, and December 31, 1987, and that in October 1987, the

plaintiff received workers' compensation benefits for the same period. Count I of the counterclaim was based on section 15—153.1(c) of the Illinois Pension Code. In count II of the counterclaim, the defendants sought recovery of the same amount on the basis of the plaintiff's promise to reimburse the defendants within 60 days of receiving the workers' compensation award.

The plaintiff filed a motion to dismiss the counterclaim; later he filed a motion for summary judgment on the counterclaim. The judge ordered Hoffmeister to process the application. Hoffmeister did so. After a hearing the Board ruled that it would not pay any retirement benefits until the plaintiff had paid back the disability benefits. The plaintiff filed an additional count to the *mandamus* complaint seeking administrative review of the Board's decision. The judge entered summary judgment for the plaintiff, in effect reversing the decision of the defendant Board.

We begin with the observation that the trial judge was presented with time-consuming and unnecessary procedural maneuvering by the defendants. All of the issues raised by the counterclaim were decided by the Board following the processing of the plaintiff's application, which the judge had to order in the first place. There was no reason for Hoffmeister to refuse at least to process the application. Consequently, there should have been no necessity for the plaintiff to file a *mandamus* suit or for the defendant Hoffmeister to file a counterclaim.

Now the defendants tell us *in their reply brief* that the trial judge lacked jurisdiction to review the Board's decision ordering the withholding of benefits because, the Board maintains, the plaintiff filed his complaint for administrative review as a separate count to his already-filed *mandamus* complaint. The Board maintains that the plaintiff should have filed a separate complaint with, of course, the attendant additional cost. It conceded that the count in administrative review was filed within 35 days of the Board's decision and was, therefore, timely.

■ Because lack of jurisdiction may be raised at any time, the fact that the Board has raised the question in its reply brief is immaterial. Consequently, we will answer the defendants' contention that the trial judge lacked jurisdiction: The defendants' argument is frivolous. None of the cases cited by the defendants is remotely in point. In *Castaneda v. Illinois Human Rights Comm'n* (1989), 132 Ill. 2d 304, 547 N.E.2d 437, the supreme court held that the complaint should have been dismissed because the plaintiff failed to exhaust his administrative remedies. In *Burns v. Edgar* (1989), 178 Ill. App. 3d

708, 533 N.E.2d 570, the plaintiff filed a complaint for injunction but never filed *any* pleading seeking administrative review in a separate complaint or in a separate count in the injunction action. In *Coles-Moultrie Electric Cooperative v. Illinois Commerce Comm'n* (1985), 131 Ill. App. 3d 946, 476 N.E.2d 1303, the court simply held that declaratory relief could not be granted in an administrative review action. Finally, in *Basketfield v. Daniel* (1979), 71 Ill. App. 3d 877, 390 N.E.2d 492, the appellate court held that the *appellate court* lacked jurisdiction in an administrative review action to order a police officer reinstated or that he receive back pay.

■■ The principal issue in this case is the interpretation of section 15—153.1(c) of the Illinois Pension Code (Ill. Rev. Stat. 1989, ch. 108½, par. 15—153.1(c)), which provides, in part, as follows:

"In determining the monthly [disability] benefits payable under this Article, a deduction shall be made equivalent to any benefits payable to any employee under any State or Federal Worker's Compensation or Occupational Diseases Acts for any period for which disability benefits are payable. However, no deduction shall be made in the case of payment for medical, surgical and hospital services and artificial members or appliances, fixed statutory payments for the loss of any bodily member, or the permanent and complete loss of use of 100% of any bodily member, payments for the loss of industrial vision or redemption awards payable prior to the date monthly disability benefits first become payable."

Section 15—185 of the Pension Code provides the Retirement System with the authority to offset an employee's additional compensation against benefits and credits he had accumulated. It states that benefits payable under the Code and all accumulated credits of participants and annuitants in the system shall be unassignable and shall not be subject to execution, garnishment or attachment. It further provides, however, that the Retirement System "may deduct from the benefits, refunds and credits, amounts owed by the participant or annuitant to the system." Ill. Rev. Stat. 1989, ch. 108½, par. 15—185.

The purpose of sections 15—153.1 and 15—185 is "to prevent [the Retirement System] participants from obtaining double recoveries of disability benefits [citation] and to facilitate recoupment of [Retirement System] disability benefits to the extent a [Retirement System] participant is eligible for workers' compensation or occupational diseases benefits for a period of time for which he or she received [Retirement System] benefits." *Taylor v. State Universities Retirement System* (1990), 203 Ill. App. 3d 513, 522, 560 N.E.2d 893, 899.

The trial judge concluded that total disability under the Workers' Compensation Act is the equivalent of "loss of use of 100% of any bodily member," that, therefore, the plaintiff came within one of the exceptions in section 15—153.1(c) and that the Retirement System was not entitled to recover the sums previously paid to the plaintiff for disability.

Although we may agree with the trial judge that, as a practical matter, total disability should be at least the equivalent of "loss of use of 100% of any bodily member," we cannot agree with his ultimate conclusion. In construing statutes, courts are not to pass on what the law should be but to determine what the law is. (*Kozak v. Retirement Board of the Firemen's Annuity & Benefit Fund* (1983), 95 Ill. 2d 211, 447 N.E.2d 394.) The legislative intent is best evidenced by the language used by the legislature. (*Totten v. State Board of Elections* (1980), 79 Ill. 2d 288, 403 N.E.2d 225.) A court cannot depart from the plain meaning of a statute by reading exceptions, limitations and conditions into the statute that the legislature did not intend. *People v. Goins* (1988), 119 Ill. 2d 259, 518 N.E.2d 1014.

In *Hanson v. Board of Trustees of the State Universities Retirement System* (1983), 115 Ill. App. 3d 974, 451 N.E.2d 925, the plaintiff received partial disability from the Retirement System and later returned to work part time. He subsequently suffered a heart attack as a result of his employment and received a workers' compensation award for total disability. The plaintiff argued, and the trial judge agreed, that his workers' compensation award should not be used to repay the amounts he received for partial disability because his partial disability and his workers' compensation award were for separate injuries. The appellate court disagreed and made this observation:

"If, as [the plaintiff] argues, the legislature had meant that the deduction would only be triggered when a double recovery *for the same injury* occurs, it would have added those very words:

'a deduction shall be made equivalent to any benefits payable to an employee [under the Workers' Compensation Act] for any period for which disability benefits are payable *for the same injury* ***.'

The statute contains no such limitation. The fact that the addition of the words would significantly alter the meaning of the provision is further evidence that the defendants' broader reading is the accurate one. The statute was enacted simply to prevent a period of duplicate recovery, regardless of the sources. When the language of a statute is precise and the intent of the draftsmen is clear, the court's only function is to enforce the

law as enacted. *Totten v. State Board of Elections* (1980), 79 Ill. 2d 288, 292, 403 N.E.2d 225." (Emphasis in original.) *Hansen*, 115 Ill. App. 3d at 976.

Similarly, in *Kozak v. Retirement Board*, the supreme court noted unambiguous statutes should be read as written and that they "should not be rewritten by a court to make them consistent with the court's idea of orderliness and public policy." (95 Ill. 2d at 220.) As the Illinois Supreme Court stated in *Koesterer v. Industrial Comm'n* (1970), 45 Ill. 2d 383, 385-86, 259 N.E.2d 49, 51, quoting *Sampson v. Industrial Comm'n* (1965), 33 Ill. 2d 301, 304:

"Whether or not the legislature is correct in awarding more compensation for one type of injury rather than another is not for the court to say. *** [T]he legislature 'has wide discretion in the exercise of the police power and absolute uniformity of treatment for injuries is impossible.' "

■ To ascertain the intent of a statute by interpreting the words present is the function of a court, but to equate "the permanent and complete loss of use of 100% of any bodily member" with a finding of total disability under the Workers' Compensation Act is to rewrite the statute. If the legislature had intended to use the term "total disability," it could have easily done so.

It is clear that the term "member" in section 15—153.1(c) alludes to the use of the term in the Workers' Compensation Act. The plaintiff concedes that the brain is not a bodily "member" as delineated in section 8(e) of the Workers' Compensation Act, which establishes the fixed statutory payments for the loss of a bodily member or total loss of use of a member. (Ill. Rev. Stat. 1989, ch. 48, par. 138.8(e).) It is also clear that injury to a brain is not included in section 8(e) of the Workers' Compensation Act and, therefore, it is not included in the exceptions set forth in section 15—153.1(c) of the Pension Code.

The plaintiff alternatively contends that his pension rights were vested under article XIII, section 5, of the Illinois Constitution before the enaction of the Pension Code provisions which allowed the reduction in pension benefits.

■ Section 5 of article XIII of the Illinois Constitution provides that "[m]embership in any pension or retirement system of the State *** shall be an enforceable contractual relationship, the benefits of which shall not be diminished or impaired." (Ill. Const. 1970, art. XIII, §5.) A majority of cases have held that this provision prohibits subsequent amendments to the law from decreasing a party's pension benefits, but allows pension benefits to be enhanced by a subsequent amendment on the theory that a new contract with the increased

vested benefits is formed if the party provides additional consideration in the form of continued contributions. See *Gualano v. City of Des Plaines* (1985), 139 Ill. App. 3d 456, 487 N.E.2d 1050; *Taft v. Board of Trustees of the Police Pension Fund* (1985), 133 Ill. App. 3d 566, 479 N.E.2d 31.

■ Pension rights vest when a person enters the pension system by making contributions or when the Illinois Constitution of 1970 became effective in 1971, whichever is later. (*Schroeder v. Morton Grove Police Pension Board* (1991), 219 Ill. App. 3d 697, 579 N.E.2d 997.) Because the plaintiff entered the system in 1951, the plaintiff's pension became vested on July 1, 1971. *Taft v. Board of Trustees of the Police Pension Fund* (1985), 133 Ill. App. 3d 566, 479 N.E.2d 31.

Because an employee acquires contractual rights when the pension benefits vest, the law existing at the time of the vesting is incorporated into the agreement. (*Carr v. Board of Trustees of the Police Pension Fund* (1987), 158 Ill. App. 3d 7, 511 N.E.2d 142.) Consequently, the law which existed in 1971 controls the interpretation of the agreement in this case.

The law in effect in 1971 included sections 15—153 and 15—185 of the Pension Code. Those provisions were substantially the same as the current provisions, sections 15—153.1 and 15—185. The language relied on by the parties was present in the provisions in effect when the Illinois Constitution was adopted and therefore governs this case. Because the 1971 law governs the plaintiff's pension and included the reduction provisions, the plaintiff's argument must fall.

■ The plaintiff has cited a number of cases: *Schroeder v. Morton Grove Police Pension Board* (1991), 219 Ill. App. 3d 697, 579 N.E.2d 997; *Fenton v. Board of Trustees* (1990), 203 Ill. App. 3d 714, 561 N.E.2d 105; *Carr v. Board of Trustees of the Police Pension Fund* (1987), 158 Ill. App. 3d 7, 511 N.E.2d 142; *Gualano v. City of Des Plaines* (1985), 139 Ill. App. 3d 456, 487 N.E.2d 1050; and *Taft v. Board of Trustees of the Police Pension Fund* (1985), 133 Ill. App. 3d 566, 479 N.E.2d 31. All those cases involve section 1(b)(1) of the Workers' Compensation Act. (Ill. Rev. Stat. 1989, ch. 48, par. 138.1(b)(1).) Section 1(b)(1) stated that the employees' pension benefits could be reduced by the amount of workers' compensation benefits which were received by the employee. In 1974, section 1(b)(1) was repealed; in 1977 provisions paralleling section 15—153.1 of the Pension Code were enacted in the portions of the Pension Code governing the pensions applicable in those cases.

In those cases the appellate court determined that repeal of the workers' compensation provision increased the individuals' pension

benefits and the individuals' subsequent contributions formed a new contract which did not include the reduction provisions. Because their pensions were vested without the reduction benefits after the repeal, the appellate court in each case determined that the reduction provision could not apply to decrease constitutionally protected benefits.

The dispositive distinction between the cases cited by the plaintiff and this case is that sections 15—153 and 15—185 have never been repealed. Consequently, there was never a period of time when the plaintiff's pension benefits vested without the reduction provision present.

The plaintiff also argues that the defendants' claim for reimbursement is barred by the doctrine of *laches, res judicata* or the Wage Payment and Collection Act (Ill. Rev. Stat. 1989, ch. 48, par. 39m—1 *et seq.*). The trial judge rejected all these arguments.

Citing *Gill v. Gill* (1972), 8 Ill. App. 3d 625, 290 N.E.2d 897, the plaintiff contends that the Retirement System's claim is barred by the doctrine of *laches*. The plaintiff maintains that the injury in question occurred in 1979 and the defendants never filed any claim for the money until 1989 when the counterclaim was filed. The plaintiff also maintains that he has been prejudiced by the failure to bring suit earlier.

■ *Laches* is an equitable principle which bars recovery by a litigant whose unreasonable delay in bringing suit prejudices the rights of the other party. (*People ex rel. Daley v. Strayhorn* (1988), 121 Ill. 2d 470, 521 N.E.2d 864.) Whether *laches* will apply depends on the facts and circumstances of a particular case. (*Eckberg v. Benso* (1989), 182 Ill. App. 3d 126, 537 N.E.2d 967.) To assert the defense of *laches*, a party must show more than a mere passage of time, but an unreasonable delay in bringing an action and that such delay materially prejudiced the party. *Nancy's Home of the Stuffed Pizza, Inc. v. Cirrincione* (1986), 144 Ill. App. 3d 934, 494 N.E.2d 795.

The determination of whether *laches* is applicable to a particular set of facts is at the discretion of the trial judge. (*Rexroat v. Abatte* (1987), 163 Ill. App. 3d 796, 516 N.E.2d 1050.) The determination of a trial judge will not be disturbed on review unless that determination is so clearly wrong as to constitute an abuse of discretion. (*Gill v. Gill* (1972), 8 Ill. App. 3d 625, 290 N.E.2d 897.) The burden of pleading and proving the delay and the prejudice is on the party which invokes the doctrine. *Nancy's*, 144 Ill. App. 3d at 941.

■ First, we judge that the plaintiff is mistaken when he claims that the time from which the *laches* should be measured is the time of the plaintiff's injury in 1979. At that time the plaintiff had not even

received the disability benefits from the Retirement System. Even after the plaintiff received the disability benefits, the defendants had no claim to any money from the plaintiff because there was no workers' compensation award which would allow the defendant to demand reimbursement. The proper time to measure the delay is the time between the "actionable incident and the filing of the suit." *Miller v. Bloomberg* (1984), 126 Ill. App. 3d 332, 466 N.E.2d 1342.

The incident in this case is the failure to return the money by the plaintiff after receiving the award. Consequently, the time from which the application of *laches* should be measured is when the workers' compensation award was received, that is January 1, 1988. The defendants had made reasonable requests for the money by letter in late 1987 and refused to process the application for retirement benefits throughout 1988. The plaintiff's counterclaim was filed only one month after the plaintiff's *mandamus* action was filed. There was no unreasonable delay present. See *Pavlakos v. Department of Labor* (1984), 128 Ill. App. 3d 783, 471 N.E.2d 547.

Second, the plaintiff has failed to show how he was prejudiced by the relatively short delay in the bringing of the counterclaim.

Third, the doctrine of *laches* is not applied to the State in the same manner that it is applied to other entities; *laches* is applied sparingly to public bodies. (*Village of Orland Park v. First Federal Savings & Loan Association* (1985), 135 Ill. App. 3d 520, 481 N.E.2d 946.) Under usual circumstances, *laches* will not apply to public bodies. (*Pavlakos*, 128 Ill. App. 3d at 793.) There is no allegation of extraordinary circumstances which would allow the doctrine of *laches* to be applied here to the Retirement System.

In the proceedings before the Industrial Commission, the plaintiff's employer, the University of Illinois, maintained that *it* was entitled to a credit for the amount paid the defendant for disability benefits by the Retirement System. The employer made that claim under section 8(j)(1) of the Workers' Compensation Act. (Ill. Rev. Stat. 1989, ch. 48, par. 138.8(j)(1).) The Commission held that section 8(j)(1) did not apply and that the employer was not entitled to any credit. The plaintiff now maintains that the denial of the employer's claim is *res judicata* of the Retirement System's claim.

To establish *res judicata*, a party must show: (1) that the former adjudication resulted in a final judgment on the merits; (2) that the former and current adjudications were between the same parties; (3) that the former adjudication involved the same cause of action and same subject matter of the later case; and (4) that a court of compe-

tent jurisdiction rendered the first judgment. *People ex rel. Scott v. Chicago Park District* (1976), 66 Ill. 2d 65, 360 N.E.2d 773.

■ We reject the plaintiff's *res judicata* argument for three reasons. First, the claim before the Industrial Commission and the subsequent claim before the trial judge were not between the same parties. The party before the Industrial Commission was the University Of Illinois; the parties before the trial judge were Donald Hoffmeister and the Retirement System. There is no indication of any collaboration between the parties nor does the plaintiff claim that these are the same parties. We are not prepared to accept the plaintiff's argument that the parties are the same because they were both State agencies.

Second, the Industrial Commission did not decide the defendant's claim. The defendant's claim for reimbursement is based on the Pension Code. The claim of the University of Illinois was based on section 8(j) of the Workers' Compensation Act.

The third reason for rejecting the plaintiff's argument is that the Industrial Commission would not be a court of competent jurisdiction to decide claims for pension benefits. The distribution of pension benefits is controlled by the Pension Code and the proper administrative agency to hear the claim is the Board of Trustees for the Retirement System.

■ The plaintiff's last contention is that the withholding of the retirement annuities is prohibited by the Wage Payment and Collection Act. Section 9 of the Act provides that "[e]xcept as hereinafter provided, deductions by employers from wages or final compensation are prohibited unless such deductions are (1) required by law; or (2) to the benefit of the employee; or (3) in response to a valid wage assignment or wage deduction order; or (4) made with the express written consent of the employee, given freely at the time the deduction is made." Ill. Rev. Stat. 1989, ch. 48, par. 39m—9.

Even assuming that retirement benefits are wages or final compensation, which is a very tenuous assumption, we must still hold that the Act is inapplicable because it provides that an *employer* may not withhold wages or final compensation. Indeed, the entire Act involves the relationship between employer and employee. The Retirement System is not the plaintiff's employer. In addition, the Act is not applicable to employees of the State of Illinois.

For all these reasons, we conclude that the judge improperly granted summary judgment to the plaintiff. Because we conclude that section 15—153.1 requires that the Retirement System be entitled to a credit, we need not decide whether the Retirement System must be reimbursed under its agreement with the plaintiff.

Questions still remain as to the proper order for this court to enter. We have already expressed the view that the counterclaim by Hoffmeister was unnecessary. Consequently, the order dismissing the counterclaim is affirmed. We reverse the order granting summary judgment on the administrative review complaint and remand the case for further proceedings.

The defendant Board has asked that we reverse outright the order granting summary judgment and to "reinstate the order of defendant Board *** in its entirety." We decline to do so. First, the Board's order fixed a specific sum of $121,577.98 to be paid by the plaintiff. This represents the entire amount paid by the Retirement System to the plaintiff. The award from which the plaintiff is to pay the Retirement System was achieved by the plaintiff and his lawyer. The Workers' Compensation Act provides generally that an attorney is entitled to 20% of an award unless a larger fee is expressly approved by the Industrial Commission. (Ill. Rev. Stat. 1989, ch. 48, par. 138.16a.) It is fair to assume that the plaintiff's lawyer will receive 20% of the $151,510.62 workers' compensation award ($30,302.12) leaving the plaintiff a balance of $121,208.50. Awarding all of the amount claimed by the Board would leave the plaintiff a deficit of $369.48. The plaintiff informs us that he has also paid State and Federal income taxes. (We assume that they were paid from his disability benefits.)

The Retirement System was aware of the workers' compensation claim. It did not intervene before the Industrial Commission or take any steps to assist the plaintiff. If the defendant Board were charged for a proportionate share of the attorney fees, it would be liable for $24,355.96. We believe that a respectable argument may be made that equitable principles might be invoked here that would reduce the amount to be paid. (See *Baier v. State Farm Insurance Co.* (1977), 66 Ill. 2d 119, 361 N.E.2d 1100; *Tenney v. American Family Mutual Insurance Co.* (1984), 128 Ill. App. 3d 121, 470 N.E.2d 6.) We make no decision on this point one way or another. We merely observe that there are questions which may be properly briefed and argued in the trial court.

Second, the order which the Board asks be reinstated requires the plaintiff to pay interest in the sum of $26,815.59 for the period between March 1, 1988, and September 18, 1990. (The amount claimed will now be much greater.) During oral argument we asked the attorney for the Board what the authority for the imposition of interest was. He was unable to tell us. We note that the Board's order refers to section 15—125 of the Illinois Pension Code. (Ill. Rev. Stat. 1989,

ch. 108½, par. 15—125.) That section deals with the rate of interest to be used in actuarial evaluations and in development of actuarial tables and the interest rate for any fiscal year determined by the Board from the investment experience of the preceding fiscal years. That section certainly does not authorize the imposition of interest in this case. The defendant's right to interest is subject to question. Again we make no decision on whether the defendant is entitled to interest. The question also would be left to the trial judge after appropriate argument and briefing.

For these reasons, we reverse the order of summary judgment in favor of the plaintiff and remand the case to the circuit court for further proceedings consistent with this opinion.

Appeal No. 1—90—3299, Judgment affirmed.
Appeal No. 1—91—1799, Judgment reversed and remanded.

McNAMARA and GIANNIS, JJ., concur.