*In re* ESTATE OF ALEX VAN PRAAG, Deceased (Safeco Insurance Company of America, Petitioner-Appellant, v. Gregory S. Van Praag, Special Adm'r of the Estate of Alex Van Praag, *et al.*, Respondents-Appellees).

Fourth District No. 4—96—0841

Argued July 24, 1997.—Opinion filed September 11, 1997.

Bernard A. Reinert and John W. Rourke (argued), both of Reinert & Duree, P.C., of St. Louis, Missouri, for appellant.

Robert W. Ohlsen (argued), of Walden, Cole, Ohlsen & Coryell, for appellee Gregory S. Van Praag.

Wayne L. Bickes (argued), of Bickes & Bickes, Ltd., of Decatur, for appellee First National Bank of Decatur.

JUSTICE GREEN delivered the opinion of the court:

Alex Van Praag died in 1979 and proceedings for the probate of his estate in the circuit court of Macon County ensued. In 1981, the decedent's son, James Van Praag, became coadministrator with will annexed and later became the sole person serving in that capacity. The instant dispute arises because in 1988, the Internal Revenue Service (IRS) levied upon the estate account at the Soy Capital Bank of Decatur (Soy Bank) in the sum of $83,676, leaving the estate insolvent. The principal issue here is whether James was liable to the estate for its loss arising from that levy. The circuit court held he

was. We conclude the court could properly have made such a determination and affirm.

On August 10, 1993, a hearing was held on four issues. The First National Bank of Decatur (FNBD), a prior personal representative of the estate, had been awarded a fee of $25,000, and it requested that fee be paid and the estate closed. The estate had made a charge of malpractice against a former attorney for the estate and James sought leave to settle that matter. Questions of fees for James and his attorney were also at issue. On November 22, 1993, the court entered an order authorizing settlement of the malpractice case and ordered the closing of the estate. Fees were denied for James and his attorney. The court also ordered James was not allowed to take credit for or deduct from the estate funds the $83,000 levied by the IRS but was to pay all creditors, legatees, and beneficiaries of the estate as if that sum had not been levied. The order required the estate to be closed by December 30, 1993, and a final report be filed.

Safeco Insurance Company (Safeco), appearing as surety on the fiduciary bond of James, moved to reconsider the November 22, 1993, order. That motion was apparently denied in regard to the issues here by an order of December 16, 1993, which granted certain relief on matters covered by the November 22 order that are not material here. The December 16 order impliedly denied any other relief from the November 22 order. Neither James nor Safeco filed a final report. Accordingly, on April 16, 1996, the court entered its own final report. 755 ILCS 5/24—15 (West 1996). That document again directed James to pay to Gregory Van Praag, who had been appointed special administrator, the $83,000, issued an attachment against James (755 ILCS 5/24—16(c) (West 1996)), and directed the special administrator (Gregory) to proceed against Safeco on James' bond.

On August 22, 1996, the circuit court entered an order approving its final account. On October 16, 1996, the court entered a personal judgment against James and in favor of the estate for the sum of $83,000 purportedly *nunc pro tunc* September 23, 1996. Safeco has filed a notice of appeal and contends no basis was shown for holding James responsible for the loss resulting from the IRS levy.

Gregory maintains Safeco's contention that James was not responsible for the loss from the IRS levy is barred because of the *res judicata* effect of the November 22, 1993, order, which was not appealed. He contends that order was final as to the rights of James in regard to the loss from the IRS levy under Supreme Court Rule 304(b) (155 Ill. 2d R. 304(b)). This contention involves a very complicated analysis of the appealability of orders in civil cases that do not end the case. As we conclude the judgment on appeal can be upheld on

the merits, we choose not to consider further the *res judicata* contention.

Most of the evidence concerning the liability of James for the IRS levy came from the August 10, 1993, hearing. Michael Bitner, an agent for the IRS, was called by FNBD and testified as follows: (1) in July 1989, he was requested by the IRS to investigate whether the estate bank account at Soy Bank could be levied upon to recover a 1978 tax obligation; (2) he identified an internal IRS memorandum requesting his involvement in the collection procedure, and the memorandum indicated James and his attorney preferred to have the account levied upon rather than for the IRS to file a claim in the probate proceeding; (3) he identified an IRS document that showed Alex and Bernice Van Praag's (Van Praags) initial 1978 tax assessment and a second 1988 assessment showing a $31,911 deficiency; and (4) he sent a letter to the judge then presiding over Alex's estate relating that the IRS wished to levy the estate bank account rather than file a claim in the probate proceeding. The evidence indicated the IRS had a well-meaning practice, of dubious propriety, of contacting judges in charge of estates to see if they objected to a levy against the assets of an estate before making such a levy. The evidence indicated the judge then presiding over the estate informed Bitner he had no objection.

The record was undisputed that the IRS then made such a levy upon the estate bank account at Soy Bank for what the IRS claimed to be unpaid taxes for 1978 owed jointly by the Van Praags. However, on cross-examination, Bitner stated he was unable to find the IRS records indicating why the 1988 assessment was made. Bitner admitted the record indicated that in November 1982, a refund was made to the Van Praags for overpayment of their 1978 taxes in the sum of $31,911. That sum was also the exact amount of the claimed deficiency for the year 1988. The amount of this claim was increased to $83,676 by charges for interest, penalties, and costs. James admitted that his mother, Bernice, received all of the alleged overpayment of $31,911 and none of it was ever placed in the estate. Bitner also admitted the record indicated the Van Praags had paid their 1978 taxes in full, and the record gave no indication why an assessment was made in 1988.

The record also showed the IRS had made numerous attempts to collect the 1988 assessment from Bernice and she had refused to pay. Bitner testified the use of a levy to collect taxes from an estate was not the usual procedure, but James and James Nangle, an attorney representing James, had indicated to him they both thought the levy process would be a swifter and surer way of getting paid than would the filing of a claim in the estate.

Use of the levy procedure gave considerable leverage to the IRS and made things more difficult for the creditors, legatees, and beneficiaries of Alex's estate. Federal statutes require that when the estate of a deceased debtor is insufficient to pay all debts of the decedent, the claim of the United States "shall be paid first." 31 U.S.C. § 3713(a)(1)(B) (1988). The decisions of an Illinois appellate court and one of a United States district court have held the foregoing priority is subject to funeral expenses and costs of administration. *Harrison v. Deutsch*, 294 Ill. App. 8, 11, 13 N.E.2d 511, 512 (1938); *United States v. Weisburn*, 48 F. Supp. 393, 397 (E.D. Pa. 1943). However, this exception is not certain, and here, James did nothing to prevent the IRS from pushing its claim for taxes ahead of FNBD's claim for fees for serving as personal representative, which was a cost of administration.

Under section 18—10 of the Probate Act of 1975, a claim of the United States government is stated to be a third-class claim inferior to not only burial expenses and expenses of administration, but also inferior to a surviving spouse's award. Ill. Rev. Stat. 1987, ch. 110$^1$/$_2$, par. 18—10 (now 755 ILCS 5/18—10 (West 1996)). Payment of claims before paying the federal government creates a personal liability of the personal representative who makes the payment. 31 U.S.C. § 3713(b) (1988). Similarly, failure to honor a federal tax levy can make the personal representative personally liable for the amount of the levy and penalties. As Bitner explained, the limitations period for contesting the levy is nine months unless an extension is granted for a brief additional period of time. See 26 U.S.C.A. § 6532(c) (West 1989).

The circuit court did not make detailed findings as to why it ruled James could not take credit for the amount of the levy but would be required to repay the estate for that sum. However, under the evidence, a set of such determinations supporting this result could have been reached. This would start with the unusual nature of James seeking a levy by the IRS. James had incentive to do something that would cause the IRS to stop bothering his mother concerning the purported additional assessment. The levy would be a swift way to get the money to the IRS under circumstances where creditors, legatees, and beneficiaries would have little time to complain and would unlikely be aware of the levy. In addition, the coercive nature of the levy process we have described would give James an excuse for not preventing the levy.

Second, under the testimony of Bitner, the court could have determined that the IRS had no claim against the estate for the purported assessment and James knew this. Bitner was unable to

find any basis in the IRS' records for an assessment against the estate. A payment had been made for 1978 federal income taxes of the Van Praags. At the time the purported assessment for 1978 taxes was made in 1988, the six-year limitations period upon 1978 taxes had expired. 26 U.S.C.A. §§ 6501(e)(1)(A), 6502(a)(1) (West 1989). A payment in the sum of $31,911 had been made by the IRS for overpayment of 1978 taxes, and this money went entirely to Bernice and none of it was ever paid to the estate. The sum of $31,911 was also the exact amount of the purported claim of deficiency for 1978 taxes, which eventually became an $83,676 item because of accrued interest, penalties, and costs. Because of the described circumstances, particularly the exact amount of the returned overpayment and the purported assessment for underpayment, the only logical conclusion is that the purported $31,911 assessment for unpaid taxes was actually a determination that a payment for overpayment of taxes in that exact amount was made in error. Had a valid assessment for underpayment of 1978 taxes been made, the parties agree that would have been a joint obligation of Bernice and the estate. Safeco does not present any theory by which a payment in error to Bernice would become an obligation of the estate.

The duty that a personal representative of a decedent's estate owes to those interested in the estate when that representative is acting in its representative capacity is the duty a trustee owes to its beneficiary. *Stone v. Stone*, 407 Ill. 66, 77, 94 N.E.2d 855, 861 (1950); *Stoke v. Wheeler*, 391 Ill. 429, 434, 63 N.E.2d 492, 494 (1945). Here, James had a conflict of interest between his affinity for his mother and his natural desire to protect her from an IRS levy, and his duty to protect the assets of the estate from such a levy. James not only failed to take any action against the levy, but he sought it and did not inform those interested in the estate of the levy until it was too late for them to prepare to attack the levy. The circuit court had every reason to conclude that James had breached his fiduciary duty to the estate in regard to the levy.

Safeco contends, on behalf of James, that James should not be held accountable for his actions or lack thereof because the judge who was contacted approved the levy and James acted upon advice of counsel. As we have indicated, the action of the IRS in contacting the judge was of dubious propriety, although it was intended to be helpful to the court if the levy would create too much of a problem. In any event, the *ex parte* indication by the court of the levy was not intended to be a determination of the rights of the parties. We are unaware of any evidence of James acting in regard to the levy on advice of counsel except that he had an attorney with him in contact-

ing the IRS about making the levy. No evidence was presented that counsel was aware of all of the circumstances involved.

Here, the court could have found that James intended to injure the interests of the estate to protect his mother. No advice of counsel could justify that conduct and no case supporting such action has been called to our attention.

Safeco also contends that the beneficiaries and claimants of the estate are guilty of *laches* in not objecting sooner to the action of James in encouraging and not contesting the levy on the Soy Bank account. However, as we have indicated, these parties received no notice of the levy at the time it took place. The levy was described in the sixth current report that was filed on May 2, 1990. The interested parties had no notice of the filing of that report and, in any event, as the levy had been completed on September 18, 1989, the nine-month limitations period had nearly expired. Even if the interested parties had noticed the May 2, 1990, report immediately, the delay of the interested parties was not unreasonable and no *laches* occurred. See *Hannigan v. Hoffmeister*, 240 Ill. App. 3d 1065, 1074, 608 N.E.2d 396, 403 (1992).

Finally, Safeco maintains the $83,000 reimbursement ordered should be reduced to $57,000 because Bernice waived $26,000 of her surviving spouse's award, which was a second-class claim. This did increase the amount available for equal or lesser-class claimants, legatees, and devisees by $26,000. However, nothing in the record indicates this waiver was made in consideration of any promise of forbearance by the estate. Bernice's waiver was a separate, voluntary act and does not negate the impropriety of the conduct of James.

Accordingly, as we indicated, we affirm.

Affirmed.

GARMAN and KNECHT, JJ., concur.