(No. 45766.—

CHARLES PETERS *et al.*, Appellees, v. THE CITY OF SPRINGFIELD *et al.*, Appellants.

*Opinion filed March 20, 1974.—Rehearing denied May 31, 1974.*

RYAN, J., dissenting.

D. Bradley Blodgett, Corporation Counsel, of Springfield, for appellants.

Knuppel, Grosboll, Becker & Tice, of Petersburg, for appellees.

Frank M. Pfeifer and Thomas W. Kelty, both of Springfield, for *amicus curiae* Illinois Municipal League.

Richard Curry, Corporation Counsel, of Chicago (William R. Quinlan, Richard F. Friedman and Lee J. Schwartz, Assistant Corporation Counsel, and Leslie Recht (Senior Law Student), of counsel), for *amicus curiae* City of Chicago.

Albert Gore, of Chicago (Scott M. Fisher and Jacobs, Gore, Burns & Sugarman, of counsel), for *amicus curiae* Fire Fighters Local No. 2.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendants, the City of Springfield, its Civil Service Commission, and its Commissioner of Public Health and

Safety, appealed from the decree of the circuit court of Sangamon County which held unconstitutional and enjoined the enforcement of an ordinance adopted by the defendant City reducing the mandatory retirement age of its policemen and firemen from 63 years to 60 years of age, and ordered the reinstatement to active duty of the plaintiffs, Charles Peters, Joseph Endres, and Ferdinand Sugent, firemen who were retired under the ordinance. We allowed defendants' motion under Rule 302(b) and ordered the appeal taken directly to this court.

The defendant City has adopted and is operating under division 1 of article 10 of the Municipal Code (Ill. Rev. Stat. 1971, ch. 24, pars. 10—1—1 through 10—1—48), which provides for civil service in municipalities. Section 10—1—18, *inter alia,* provides that municipalities which have adopted division 1 "may by ordinance provide an age limit of not less than 63 years as the maximum age for the legal employment of any person employed as a policeman or fireman ***." In holding the ordinance invalid the trial court found that it conflicted with section 10—1—18 of the Municipal Code and

"8. That the Plaintiffs, Joseph Endres and Charles Peters have not been allowed to earn their maximum pension as provided by Article 4 of Chapter 108½, Illinois Revised Statutes (1971) because of the mandatory retirement of them by the City of Springfield prior to age 63 in accordance with the above referred to City Ordinance.

9. That said ordinance is in violation of the 1970 Constitution of the State of Illinois, Section 5 of Article 13 thereof in that said City Ordinance, by forcing Plaintiff Joseph Endres and Plaintiff Charles Peters to retire before obtaining their maximum pension benefits, diminishes and impairs their pension rights as they existed at the time of their employment as firemen of the City of Springfield.

10. That with respect to all three Plaintiffs, the City Ordinance here in question violates Section 6(i), Article 7, of the 1970 Illinois Constitution, in that the State of Illinois having previously legislated a mandatory age of retirement for firemen, the City of Springfield, as a

home rule unit, is required to legislate concurrently with the State when setting its mandatory age of retirement.

11. That the Defendant, City of Springfield, has failed to legislate concurrently with the State statutory enactment imposing a minimum mandatory retirement age for firemen."

In their joint brief, defendants and *amicus curiae,* the Illinois Municipal League, argue that "state statutes which pre-date the 1970 Illinois Constitution are not limitations on a home rule government's power to legislate pertaining to its government and affairs" and that "plaintiffs' contractual rights in their pension fund do not include the right to work to any certain age \*\*\* or until they could receive the maximum benefits \*\*\*." In its brief, *amicus curiae* City of Chicago argues that home-rule units may enact ordinances superseding statutes enacted prior to the effective date of the 1970 Constitution and that the ordinance does not impair or diminish any vested contractual pension benefit of the plaintiffs.

Plaintiffs contend that the trial court correctly held that the defendant City was without authority to enact the ordinance, and that the ordinance impaired plaintiffs' pension benefits in violation of section 5 of article XIII of the 1970 Constitution. Fire Fighters Local No. 2, International Association of Firefighters (hereafter Fire Fighters), as *amicus curiae,* contends that the ordinance violates section 5 of article XIII and section 16 of article I of the 1970 Constitution and that in its enactment the defendant City "exceeded its home rule powers."

The rationale of the trial court's decision and the principal basis for the arguments advanced by plaintiffs and *amicus* Fire Fighters that the ordinance is violative of section 6(i) of article VII of the Constitution is that in enacting the civil service code for municipalities, the General Assembly had established a statutory scheme fixing procedures and minimum standards; that the debates of the delegates to the constitutional convention show an intent to preserve these existing statutory schemes

which fix procedures and minimum standards and place them beyond the power of home-rule units to establish different procedures or lower standards; that under the provisions of section 9 of the transition schedule of the constitution the existing statutory scheme remained in force and effect, and that under the provisions of section 6(i) the defendant City may act concurrently with the State but cannot establish different procedures or set lower standards. In support of their argument plaintiffs and Fire Fighters cite the debates of the constitutional convention with respect to a provision proposed for inclusion in what became section 6 of article VII. The Local Government Article, as proposed by the Local Government Committee, contained section 3.2(d), which provided: "The General Assembly may by general law provide standards and procedures for the exercise of powers and performance of functions granted by paragraph 3.1(a)." (7 Record of Proceedings, Sixth Illinois Constitutional Convention 1578 (hereinafter cited as Proceedings).) Section 3.1(a), to which 3.2(d) referred, became section 6(a) of article VII of the Constitution as adopted. In commenting on section 3.2(d) the majority report stated: "It is a necessary 'savings clause' intended to preserve order and uniformity in the myriad of situations where lack of statutory standards and prescribed procedures could lead to chaos and confusion. Requirements of notice, hearing and public meetings are examples of subjects that would fall under this paragraph." (7 Proceedings 1645.) The minority report asserted that section 3.2(d) was unnecessary, and that sections 3.2(b) and 3.2(c) (now sections 6(h) and 6(i) of article VII) provided the General Assembly with the power to enact any necessary or appropriate standards or procedures. They argued further that section 3.2(d) would defeat the power granted by section 6(a) of article VII if the General Assembly, by inaction, failed to enact standards and procedures for the exercise of powers and performance of functions granted by section 6(a) of article VII. 7 Proceedings 1909-1911.

When the proposed article reached the floor of the convention a motion was offered to delete section 3.2(d). The chairman of the Local Government Committee agreed to delete the word "standards" from the provision, stating that it was intended to deal with procedural uniformity. (4 Proceedings 3114.) This was not acceptable to the opponents of the section and it was suggested that "minimum" be inserted before "standards." The chairman again emphasized that it was meant to deal with procedure and it was suggested that the provision be amended to read "procedural standards." (4 Proceedings 3115.) The motion to delete section 3.2(d) was finally voted upon and carried. 4 Proceedings 3118-3119.

A reading of the majority and minority reports (7 Proceedings 1591 and 1909) and the debate on the proposed provision (4 Proceedings 3113-3118) shows that the members of the convention recognized a need for legislative power to standardize certain areas of local governmental activity. The controversy centered around the manner in which the General Assembly must exercise this power and the method selected by the convention is contained in sections 6(g), (h), (i) and (l) of article VII.

In *Kanellos v. County of Cook,* 53 Ill.2d 161, and *People ex rel. Hanrahan v. Beck,* 54 Ill.2d 561, we approved ordinances adopted pursuant to section 6(a) of article VII, which were in conflict with existing statutes enacted prior to the effective date of the Constitution. The rationale of those decisions is that a home-rule unit may exercise a power conferred upon it under the provisions of section 6(a), even though such exercise of the power conflicts with a statute enacted prior to the adoption of the 1970 Constitution, unless the power is restricted by either a constitutional provision or appropriate legislative action.

Plaintiffs and *amicus* Fire Fighters attempt to distinguish these cases on several grounds. They argue that *Kanellos* involved local taxation and *Beck* was concerned with the internal structure of local government, while this

case involves a statute which encompasses a broad State interest. They argue, too, that neither *Kanellos* nor *Beck* involved an attempt to act concurrently with the State, and that section 6(i) of article VII requires that any such concurrent action be consistent with statutes adopted prior to the effective date of the Constitution. They contend that the civil service code for municipalities is of overriding statewide interest and is comparable to the interest of the State in uniform regulations relative to public utilities or pollution control. This latter argument is refuted by the fact that in addition to division 1 of article 10 of the Municipal Code under which the defendant City operates, the Municipal Code contains division 2.1 of article 10 (Ill. Rev. Stat. 1971, ch. 24, par. 10−2.1−1 through par. 10−2.1−30), which also provides for civil service for firemen and policemen in those municipalities which have elected to adopt its provisions. Under section 10−2.1−17 of division 2.1 (ch. 24, par. 10−2.1−17) the retirement age for firemen and policemen is 65 "unless the Council or Board of Trustees shall by ordinance provide for an earlier retirement age of not less than 60 years." There is no statutory limit on the mandatory retirement age which a municipality may establish which has not elected to adopt the provisions of division 1 of article 10, or division 2.1 of article 10, and although civil service applies to every fire protection district of which all the members are full time and paid (Ill. Rev. Stat. 1971, ch. 127½, par. 37.01), the civil service provisions applicable to fire protection districts (ch. 127½, par. 37.01 through 37.18) do not set any limit on the mandatory retirement age which the board of trustees of the district may establish. It is apparent that there is not an established statewide civil service system for municipal employees or firemen and, indeed, the 78th General Assembly failed to enact legislation which would have established such a system (Senate Bills 217 and 566; House Bills 345, 348 and 1811).

We hold that the doctrine of *Kanellos* and *Beck* is applicable to the ordinance, and that in its enactment the defendant City did not contravene the provisions of section 6(i) of article VII.

*Amicus* Fire Fighters contends that the civil service system adopted by the defendant City became a part of its form of government and that under section 6(f) of article VII its form of government may not be altered without approval by referendum. The Local Government Report to the convention suggests that "form of government" as used in section 6(f) of article VII involves the election of municipal governing boards and the relationship between the legislative and executive branches of government. (7 Proceedings 1667.) The civil service system of a municipality is not its form of government and changes in the system need not be submitted to a referendum. Nor do we find persuasive the argument that because division 1 of article 10 of the Municipal Code was adopted by the defendant City by referendum conducted pursuant to section 10—1—43 of the Municipal Code, that its citizens entrusted to the Civil Service Commission, and not the city council, the authority to determine the mandatory retirement age. It is apparent that, although the Commission had authority under section 10—1—5 to make rules to carry out the purposes of the division, the legislative authority to enact ordinances remained vested in the city council.

Plaintiffs and *amicus* Fire Fighters contend next that contrary to section 5 of article XIII of the Constitution the ordinance impairs and diminishes their pension benefits. Section 5 of article XIII provides: "Membership in any pension or retirement system of the State, any unit of local government or school district, or any agency or instrumentality thereof, shall be an enforceable contractual relationship, the benefits of which shall not be diminished or impaired."

The firemen's pension fund statute provides:

"Any fireman age 50 or more who has creditable service of 20 years or more \*\*\* shall receive \*\*\* a monthly pension of ½ the monthly salary attached to the rank held by him in the fire service at the date of his retirement.

Such monthly pension shall be increased by 1% of such monthly salary for each additional year over 20 years of service, to a maximum limit of 65% of such monthly salary." (Ill. Rev. Stat. 1971, ch. 108½, par. 4—109.)

At the time of trial plaintiff Peters was 60 years of age, had been a Springfield fireman for 32 years and 9 months, had been a driver-engineer and had been paid $841.72 a month. If forced to retire at age 60, he would receive 62% of his salary, or $521.43 a month. Plaintiff Endres was 62 years old, had been a Springfield fireman for 28 years, had been a captain and had been paid $879.54 a month. If forced to retire he would receive 58% of his salary, or $527.13 a month. Plaintiff Sugent was 60 years old, had been a Springfield fireman for 35 years and 7 months, had been a captain, had been paid $879.54 a month and if forced to retire will receive 65% of his salary, or $571.70 a month.

In explaining its decision the trial court stated that section 5 of article XIII of the Constitution "must be construed to include within an employee's pension rights the minimum retirement age provided by the law at the time he enters the system." It held that plaintiffs Peters and Endres had a constitutionally protected contract right under section 5 of article XIII to work until they had earned a pension of 65% or until they reach age 63, whichever is sooner. As to plaintiff Sugent, the court held that section 5 of article XIII did not prevent his mandatory retirement at age 60 because he had earned his maximum pension of 65%.

Section 5 of article XIII was not included in the report of any committee of the convention but was proposed on the floor of the convention (4 Proceedings

2925) without a formal hearing. The debate on the provision (4 Proceedings 2925-2933) indicates a general intent to protect the pension benefits of public employees, but, other than concern that vested rights not be defeated by reason of the failure to provide necessary funding, reflects uncertainty as to the scope of the restriction which the section imposed on legislative bodies.

The City of Springfield and *amicus curiae* Illinois Municipal League argue that the only contractual rights protected by section 5 of article XIII are those which are based upon and within the scope of the statute and that the statute does not provide that a fireman may work until age 63. *Amicus curiae* City of Chicago argues that the right to work until a specified age is not a pension benefit and that the Springfield ordinance adopted in the exercise of its home-rule power affects plaintiffs' pension benefits "only indirectly."

The firemen's pension fund formula is based on salary and length of service and obviously any change in these variables will affect the amount of the pension. Municipal employment is not static and a number of factors might require that a public position be abolished, its functions changed, or the terms of employment modified. Although this court has not previously considered the nature of the "enforceable contractual relationship" contemplated by section 5 of article XIII, a similar provision is contained in the Constitution of New York and has been construed by the courts of that State. (See *Hoar v. City of Yonkers* (1946), 295 N.Y. 274, 67 N.E.2d 157; *Humbeutel v. City of New York* (Sup. Ct. 1953), 125 N.Y.S.2d 198, *aff'd* (1954), 283 App. Div. 1011, 131 N.Y.S.2d 445, *aff'd* (1955), 308 N.Y. 904, 126 N.E.2d 569; *Geary v. Phillips* (Sup. Ct. 1967), 53 Misc. 2d 337, 278 N.Y.S.2d 506; but see *Pettit v. McCabe* (Sup. Ct. 1969), 60 Misc. 2d 177, 302 N.Y.S.2d 209; see also, Cohn, "Public Employee Retirement Plans—The Nature of the Employees' Rights, 1968 U. Ill. L.F. 32.) From our review of the constitutional debates

and the authorities, we conclude that the purpose and intent of the constitutional provision was to insure that pension rights of public employees which had been earned should not be "diminished or impaired" but that it was not intended, and did not serve, to prevent the defendant City from reducing the maximum retirement age, even though the reduction might affect the pensions which plaintiffs would ultimately have received.

For the reasons stated the decree of the circuit court of Sangamon County is reversed and the cause is remanded with directions to dissolve the injunction and dismiss the action.

*Reversed and remanded,*
*with directions.*

MR. JUSTICE RYAN, dissenting.