ROBERT F. MILLER, Indiv. and on Behalf of Others Similarly Situated, Plaintiffs-Appellants and Cross-Appellees, v. THE RETIREMENT BOARD OF POLICEMEN'S ANNUITY AND BENEFIT FUND OF THE CITY OF CHICAGO, Defendant-Appellee and Cross-Appellant.

First District (1st Division) No. 1—00—1549

Opinion filed October 15, 2001.—Rehearing denied May 17, 2002.—Modified opinion filed May 20, 2002.

J. Peter Dowd and Chandra S. Bowling, both of Dowd, Bloch & Bennett, of Chicago, for appellants.

Michael G. Cleveland, of Vedder, Price, Kaufman & Kammholz, and David R. Kugler, both of Chicago, for appellee.

JUSTICE COUSINS delivered the opinion of the court:

The plaintiffs, a class of Chicago police officers who worked past age 63, brought a civil rights action pursuant to 42 U.S.C. § 1983 (1994) against the Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago (the Board). Plaintiffs alleged that the Board's application of Public Act 86—272 (Pub. Act 86—272, eff. August 23, 1989), which amended the Illinois Pension Code (the Code) (Ill. Rev. Stat. 1989, ch. 108½, par. 5—101 *et seq.*), deprived them of a constitutionally protected property interest in pension benefits without due process of law.

On October 1, 1998, the trial court entered an order granting in part and denying in part plaintiffs' motion for summary judgment. Specifically, the trial court found in plaintiffs' favor by ruling that the Board's application of Public Act 86—272 unconstitutionally deprived plaintiffs of their property interest without notice or hearing. The trial court ruled against plaintiffs by holding that Public Act 86—272

was unconstitutional as applied to all members of the plaintiff class, even though some plaintiffs received increased benefits under the Act.

Plaintiffs filed a motion seeking clarification or reconsideration of the trial court's decision. The trial court denied plaintiffs' motion. Plaintiffs appealed and the Board cross-appealed.

On appeal, plaintiffs argue that: (1) the trial court erred in refusing to adopt a construction of Public Act 86—272 that would increase plaintiffs' pension benefits for service after age 63 and thereby avoid an unconstitutional interpretation of the amendment; and (2) the trial court erred by failing to limit the application of its ruling to only police officers whose benefits had been reduced.

On cross-appeal, the Board contends that: (1) the plaintiffs were not deprived of a constitutionally protected property interest; and (2) the plaintiffs were not denied the right to a hearing.

## BACKGROUND

Plaintiff Robert F. Miller represents a certified class of 61 retired Chicago police officers and police officers' widows. Plaintiffs allege that in 1991, the Board decreased the amount of plaintiffs' pensions and/or failed to give plaintiffs credit for the full amounts of their earned pensions without due process of law, as guaranteed by the fourteenth amendment (U.S. Const., amend. XIV), in violation of 42 U.S.C. § 1983 (1994).

The Policemen's Annuity and Benefit Fund of the City of Chicago is created by the Illinois Pension Code (Ill. Rev. Stat. 1989, ch. 108½, par. 5—101 *et seq.*) and provides benefits to retired Chicago police officers. The retirement Board, composed of eight trustees, is responsible for the administration of the fund.

Prior to 1983, the mandatory retirement age for Chicago police officers was 63. In 1983, the United States Supreme Court decided that the Age Discrimination in Employment Act (ADEA) (29 U.S.C. § 621 (1982)) applied to state law enforcement officials. *Equal Employment Opportunity Comm'n v. Wyoming*, 460 U.S. 226, 75 L. Ed. 2d 18, 103 S. Ct. 1054 (1983). Chicago's retirement age rose from 63 to 70. In 1986, Congress amended the ADEA to allow state and local governments to reinstitute mandatory retirement ages. 29 U.S.C. § 623(j) (Supp. 1991). In January 1988, Chicago restored the mandatory retirement age of 63 for police officers. See *McCann v. City of Chicago*, 968 F.2d 635, 636 (7th Cir. 1992). Thus, for a period of approximately five years from 1983-88, Chicago police officers were permitted to work beyond age 63. This five-year period is the focus of the controversy at bar.

### Preamendment Calculations

In May 1985, plaintiff Robert Miller reached 63 years of age but

continued working as permitted by law at the time. Prior to 1989, the Pension Code fixed retirement benefits at age 63. Thus, as of 1983, the Board was faced with the situation of police officers, like Robert Miller, working past the age of 63 when the Pension Code fixed their pension benefits at age 63. Ill. Rev. Stat. 1983, ch. 108½, par. 5—128. The Board decided that it would calculate benefits by fixing an officer's base monthly benefit at age 63, as was still required by the Code. Police officers were also entitled to an automatic statutory increase to be applied annually to the base annuity commencing the year after their pension was "fixed" at age 63. Ill. Rev. Stat. 1983, ch. 108½, par. 5—128.[1] For purposes of pension calculations, the Board treated each officer as if he had retired when he reached the age of 63, but officers who elected to keep working did not begin collecting a pension until actual retirement. As a result, the Board did not permit further payroll contributions to the fund and did not give credit for added service or salary increases for work performed after age 63.

## Postamendment Calculations

When the City restored the mandatory retirement age to 63 in January 1988, officers like Robert Miller who had worked past 63 were forced to retire by March 1988. They began collecting pension benefits where the base annuity had been fixed at age 63 and an automatic annual 3% increase was applied as the officer turned 64, 65, etc.

In August 1989, the Illinois General Assembly enacted Public Act 86—272, amending several sections of the Code. An officer's annuity was no longer fixed at age 63 but, rather, was changed to the date the officer withdrew from service. Ill. Rev. Stat. 1989, ch. 108½, par. 5—128. No contributions were required of officers for the period between the date the employee attained age 63 and January 1, 1988. Ill. Rev. Stat. 1989, ch. 108½, par. 5—169. The effective date of the amendments was made retroactive to January 1, 1988. Ill. Rev. Stat. 1989, ch. 108½, par. 5—229.1.

In February 1991, the Board informed plaintiffs by letter that, due to the amendment, their annuities would now be fixed as of the date they withdrew from service rather than at age 63. The letter did not state that a participant's pension might be lowered as a result of the

---

[1]The provision governing the statutory increases, section 5—167.1, was not amended by Public Act 86—272. Also, until 1983, officers were entitled to a 1½% annual increase in their base annuity after retirement. Ill. Rev. Stat. 1971, ch. 108½, par. 5—167.1. Public Act 82—1044 (Pub. Act 82—1044, eff. January 12, 1983) raised the increase applicable to plaintiff officers from 1½% to 3%, beginning January 1, 1983. Ill. Rev. Stat. 1983, ch. 108½, par. 5—167.1.

amendment, only that contributions might be required. In September 1991, the Board notified class members by letter that officers who worked past age 63 would be credited with additional service from January 1, 1988 (the retroactive effective date of the amendments), and their actual retirement date (in most cases, the forced retirement date of March 1988). The Board demanded that the officers make contributions to the fund for this period of time. The Board also determined that the 3% automatic annual statutory increases previously calculated from age 63 should be recalculated from the actual retirement date and further demanded that the 3% increases already distributed be paid back to the fund by the officers.

Thus, in the case of Robert Miller, for example, his pension benefits were affected as follows:

> (1) monthly benefit reduced by $142.41 (due to cancellation of 3% increase);
> (2) must repay $6,180.13 (return previously paid 3% increase); and
> (3) pay $975.26 in additional employee contributions (from January 1, 1988, to March 27, 1988).

According to the plaintiffs, although their base annuities were increased slightly, the monthly annuities and total benefits of many of the class members had been reduced after the amendment.

In a letter dated December 18, 1991, Miller's attorney wrote to the Board and asked it to reconsider its position. The Board responded by letter dated March 24, 1992, stating that it would not reconsider and that its interpretation would "in fact increase [Mr. Miller's benefits] by virtue of these changes."

### Litigation

In 1992, class representative Miller filed a three-count lawsuit against the Board. Count I alleged that the Board's application of Public Act 86—272 deprived them of a constitutionally protected property interest in pension benefits without due process of law in violation of 42 U.S.C. § 1983 (1994). Count II alleged violations of the Administrative Review Law (735 ILCS 5/3—101 et seq. (West 1992)), and count III alleged that Public Act 86—272 was unconstitutional on its face. The court subsequently dismissed counts II and III, and they are not part of this appeal.

On April 14, 1994, the trial court certified plaintiffs' class action with respect to count I. In the spring of 1998, both sides filed cross-motions for summary judgment. On October 1, 1998, the trial court held that the Board's interpretation of Public Act 86—272 was unconstitutional as applied to plaintiffs because it "directly impacted the formula for calculating the pension benefits of the plaintiffs as applied." According to the trial court:

"The Court's unsuccessful exhaustive search for legislative intent or legislative history and the guesswork which would be involved in ascertaining a 'better' way of interpreting and applying P.A. 86—272 than the Board interpreted and applied the legislation are indications to this Court that the amendments should not apply to plaintiffs at all. The amendments to the Pension Code contained in P.A. 86—272 apply to all Chicago police officers who entered the system after January 1, 1998 [*sic*], the retroactive effective date of the statute. This is the simplest way to follow the directives of the General Assembly, the best way to stay within the confines of the provisions of the Illinois Constitution, and the most equitable treatment of the parties involved. Plaintiffs' motion for summary judgment is granted, but only to the extent that the provisions of P.A. 86—272 do not apply to them."

Although the trial court discussed plaintiffs' argument that the Board should credit plaintiffs for service from age 63 to January 1, 1988, it did not predicate its decision upon this claim. The trial court concluded that its decision only applied to the class members in this case.

The Board filed a notice of appeal to the Illinois Supreme Court on October 28, 1998. After the Board did so, plaintiffs filed their motion for clarification of the court's ruling. On November 10, 1998, the trial court stayed that motion in light of the pending appeal.

On November 10, 1998, plaintiffs also moved to dismiss the Board's appeal to the supreme court. On December 30, 1998, the supreme court denied plaintiffs' motion to dismiss the appeal but transferred the case to this court pursuant to Supreme Court Rule 365 (155 Ill. 2d R. 365). On November 22, 1999, this court dismissed the appeal for lack of jurisdiction because no final order was entered.

After defendant's appeal was dismissed, plaintiffs filed an amended motion requesting clarification and reconsideration of the October 1, 1998, ruling. The plaintiffs argued that: (1) the trial court's October 1998 ruling should only be applied to those members of the plaintiff class who had reductions in their monthly pension benefits and/or had to repay pension benefits previously received so that their benefits were diminished; and (2) the trial court should reconsider its refusal to interpret Public Act 86—272, which would result in all members of the plaintiff class receiving service and salary credits for the period between the date they attained age 63 and the January 1, 1988, effective date of the amendment. On April 11, 2000, the trial court denied plaintiffs' motion and, pursuant to Rule 304(a) (155 Ill. 2d R. 304(a)), entered a final appealable order.

Plaintiffs appeal and defendant cross-appeals. We affirm in part and reverse in part and remand.

## ANALYSIS

## I. CONSTITUTIONAL CLAIM

■ Plaintiffs' civil rights action is brought pursuant to section 1983 of the Civil Rights Act (42 U.S.C. § 1983 (1994)). Section 1983 provides a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." 42 U.S.C. § 1983 (1994). A plaintiff must allege two elements under section 1983: (1) some person has deprived him of a federal right; and (2) the person who has deprived him of that right acted under color of state or territorial law. *Gomez v. Toledo*, 446 U.S. 635, 640, 64 L. Ed. 2d 572, 577, 100 S. Ct. 1920, 1923 (1980).

■ Plaintiffs allege that the defendants violated their constitutionally protected property rights under the fourteenth amendment. U.S. Const., amend. XIV. The fourteenth amendment forbids the state from depriving any person of life, liberty, or property without due process of law. Protected property interests are normally not created by the Constitution. *Goss v. Lopez*, 419 U.S. 565, 572, 42 L. Ed. 2d 725, 733, 95 S. Ct. 729, 735 (1975). Instead, they are created and their dimensions are defined by an independent source, such as state statutes or rules, that support claims of entitlement to certain benefits. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 33 L. Ed. 2d 548, 561, 92 S. Ct. 2701, 2709 (1972). "A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." *Perry v. Sindermann*, 408 U.S. 593, 601, 33 L. Ed. 2d 570, 580, 92 S. Ct. 2694, 2699 (1972). A legitimate claim of entitlement means more than a unilateral expectation or abstract desire for it. *Roth*, 408 U.S. at 577, 33 L. Ed. 2d at 561, 92 S. Ct. at 2709. The entitlement must be " 'securely and durably yours *** as distinct from what you hold subject to so many conditions as to make your interest meager, transitory, or uncertain.' " *Wallace v. Robinson*, 940 F.2d 243, 246 (7th Cir. 1991), quoting *Reed v. Village of Shorewood*, 704 F.2d 943, 948 (7th Cir. 1993).

Plaintiffs contend that they had a protected property interest in pension benefits predicated upon three bases: (1) the pension protection clause of the Illinois Constitution of 1970 (Ill. Const. 1970, art. XIII, § 5); (2) a statutory provision of the Pension Code that requires a hearing before any reduction in benefits occurs (Ill. Rev. Stat. 1989, ch. 108½, par. 5—189); and (3) that past payments at a specified rate gave rise to a reasonable expectation that such payments would continue.

On appeal, defendants argue that the trial court erred in determining that plaintiffs had a constitutionally protected property interest in their benefits under the pension protection clause. We disagree.

▪ Article XIII, section 5, of the 1970 Illinois Constitution provides:
"Membership in any pension or retirement system of the State, any unit of local government or school district, or any agency or instrumentality thereof, shall be an enforceable contractual relationship, the benefits of which shall not be diminished or impaired." Ill. Const. 1970, art. XIII, § 5.

According to the Illinois Supreme Court, "[t]he plain language of the pension protection clause makes participation in a public pension plan an enforceable contractual relationship and also demands that the 'benefits' of that relationship 'shall not be diminished or impaired.' " *People ex rel. Sklodowski v. State*, 182 Ill. 2d 220, 228-29, 695 N.E.2d 374 (1998), quoting Ill. Const. 1970, art. XIII, § 5. The purpose behind the pension protection clause was to provide public employees with a basic protection against abolishing their rights completely or changing the terms of their rights by reducing their benefits after they had already embarked upon employment. *Felt v. Board of Trustees of the Judges Retirement System*, 107 Ill. 2d 158, 162, 481 N.E.2d 698 (1985).

A majority of cases have held that section 5 of article XIII of the Illinois Constitution "prohibits subsequent amendments to the law from decreasing a party's pension benefits, but allows pension benefits to be enhanced by a subsequent amendment on the theory that a new contract with the increased vested benefits is formed if the party provides additional consideration in the form of *continued contributions*." (Emphasis added.) *Hannigan v. Hoffmeister*, 240 Ill. App. 3d 1065, 1072-73, 608 N.E.2d 396, 402 (1992); *Taft v. Board of Trustees of the Police Pension Fund*, 133 Ill. App. 3d 566, 572, 479 N.E.2d 31, 35 (1985) ("[T]he employee can take advantage of a beneficial pension change where he provides consideration for the contractual modification, most often taking the form of new or continued contributions to the pension system" (emphasis omitted)); *Gualano v. City of Des Plaines*, 139 Ill. App. 3d 456, 459, 487 N.E.2d 1050, 1052 (1985).

Two cases cited by the plaintiff, *Kraus v. Board of Trustees of the Police Pension Fund*, 72 Ill. App. 3d 833, 390 N.E.2d 1281 (1979), and *Felt*, are instructive. In *Kraus*, plaintiff police officer had been receiving a disability pension since 1967. In 1976, plaintiff advised the defendant retirement board of his intention to retire on a regular pension. When the plaintiff's rights vested in the system in 1971, the statute in effect at the time allowed an officer on disability to retire at a regular pension equal to one-half of the salary attached to his rank the year preceding his retirement. An amendment to the Code in 1973

changed the amount of pension plaintiff could receive, reducing the amount to one-half of the salary attached to his rank on the police force at the date plaintiff went on disability. *Kraus*, 72 Ill. App. 3d at 835-36.

The court held that application of the amendment would directly diminish plaintiff's benefits in contravention of section 5 of article XIII. *Kraus*, 72 Ill. App. 3d at 844. In order to explain diminished benefits, the court quoted delegate Kinney's remarks made during the legislative debates surrounding the adoption of article XIII, section 5:

> " 'Benefits not being diminished really refers to this situation: If a police officer accepted employment under a provision where he was entitled to retire at two-thirds of his salary after twenty years of service, that could not subsequently be changed to say that he was entitled to only one-third of his salary after thirty years of service, or perhaps entitled to nothing. This is the thrust of the word "diminished." ' " *Kraus*, 72 Ill. App. 3d at 843, quoting 4 Record of Proceedings, Sixth Illinois Constitutional Convention 2929.

The court compared both statutes and found that plaintiff stood to gain a higher pension under the old system than under the newer 1973 amendment. *Kraus*, 72 Ill. App. 3d at 844. Importantly, the amendment directly changed the formula used to calculate plaintiff's pension and accordingly reduced his benefits. The court concluded that plaintiff was entitled to receive benefits under the relevant sections of the Pension Code in effect at the time the constitutional provision became effective in 1971. *Kraus*, 72 Ill. App. 3d at 844.

Similarly, *Felt* involved an amendment to the Pension Code that reduced the retirement benefits for judges. Prior to the amendment, the salary base used to compute an annuity was the judge's salary on the last day of judicial service. After the amendment effective in 1983, the salary base changed to the average salary for the final year of service as a judge. *Felt*, 107 Ill. 2d at 160-62. The court found that "[t]he change in the basis of computation clearly effects a reduction or impairment in the retirement benefits of the plaintiff[s]" in violation of section 5 of article XIII. *Felt*, 107 Ill. 2d at 162-63. The court therefore held that the amendment was an unconstitutional impairment of contract.

■ The instant case is analogous to *Kraus* and *Felt*. Since it is undisputed that the plaintiffs entered the system before 1971, their pensions became vested in 1971 and the law which existed at that time controls the interpretation of the agreement in this case.

Prior to the 1989 amendment, section 5—128 fixed the plaintiffs' base annuity at age 63 as follows:

> "When a future entrant attains age 63 in service, his age and

service annuity shall be fixed as of age 63. The annuity shall be that provided from the entire sum to his credit for age and service annuity on the date he attains age 63." Ill. Rev. Stat. 1987, ch. 108½, par. 5—128.

Before the mandatory retirement age of 63 was abolished in 1983, retired police officers were also entitled to an automatic annual increase in their base annuity under section 5—167.1. Ill. Rev. Stat. 1983, ch. 108½, par. 5—167.1. Prior to 1983, police officers were entitled to a 1½% annual increase in their base annuity after retirement. Ill. Rev. Stat. 1971, ch. 108½, par. 5—167.1. Public Act 82—1044 (Pub. Act 82—1044, eff. January 12, 1983) raised the increase to 3% beginning January 1, 1983. Ill. Rev. Stat. 1983, ch. 108½, par. 5—167.1. We note that defendant Board has not contended that plaintiffs were only entitled to the 1½% increase that was in effect when their benefits vested in 1971. Since defendant did not raise this issue before the trial court or on appeal, it is therefore waived. 134 Ill. 2d R. 341(e)(7).

Section 5—167.1 was not amended by Public Act 86—272 and the version in effect in 1983 stated in pertinent part:

"A policeman who retires from service *** shall, upon *** the first of the month following the first anniversary of his date of retirement *** have his then fixed and payable monthly annuity increased by 1½% ***. *Beginning January 1, 1983, such increases shall be 3% for policemen born before January 1, 1930 ***.*"

(Emphasis added.) Ill. Rev. Stat. 1983, ch. 108½, par. 5—167.1.

It is undisputed that plaintiff police officers were born before January 1, 1930. After 1983 when police officers were permitted to work beyond 63, the plaintiffs' base annuities were considered fixed at age 63 under section 5—128. However, section 5—167.1 was not designed to address a situation where an officer continued to work beyond the date when his or her annuity became fixed. The Board then faced the dilemma of *when* to begin applying the 3% increase under section 5—167.1.

The statute itself was susceptible to two interpretations. On the one hand, the Board could have determined that only "a policeman who retires from service" was entitled to begin receiving the 3% increase, in which case the increase would occur one year after the officer actually retired. On the other hand, the Board could have focused on the language that the annuity, once "fixed," was to be increased by 3% per annum, which would occur at age 63 under the old version of section 5—128. The Board chose the latter interpretation and determined that the 3% annual increases would accrue after age 63, but would not be paid until the plaintiffs actually retired. The Board's

conclusion was consistent with the general rule that pension acts are to be liberally construed in favor of the rights of the pensioner. *Johnson v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 114 Ill. 2d 518, 521, 502 N.E.2d 718 (1986). It also comported with the understanding that a "statute capable of two interpretations should be given that which is reasonable and which will not produce absurd, unjust, unreasonable or inconvenient results." *Collins v. Board of Trustees of the Firemen's Annuity & Benefit Fund*, 155 Ill. 2d 103, 110, 610 N.E.2d 1250 (1993).

When the mandatory retirement age of 63 was reinstated and some plaintiffs were forced to retire in March 1988, they began collecting annuities with the 3% annual increases that had already accrued since age 63. Public Act 86—272, enacted in August 1989, amended section 5—128 by changing the date the plaintiffs' base annuity was fixed from age 63 to the date of withdrawal from service as follows:

> "When a future entrant withdraws from service, his age and service annuity shall be fixed as of the date of withdrawal. The annuity shall be that provided from the entire sum to his credit for age and service annuity on the date he withdraws from service." Ill. Rev. Stat. 1989, ch. 108½, par. 5—128.

The amendment made to section 5—128 was to be retroactive to January 1, 1988 (Ill. Rev. Stat. 1989, ch. 108½, par. 5—229.1). Under the amendment, the annuity was no longer "fixed" at age 63 but was changed to the date of withdrawal. Although Public Act 86—272 did not explicitly amend section 5—167.1 (the 3% increase statute), the shift in the base annuity's "fixing" date caused the Board to reconsider its previous decision of allowing 3% annual increases to occur one year after age 63. In 1991 the Board sent letters canceling the 3% increases from inception, requiring the plaintiffs to refund the increases that had already been paid to them. The cancellation also caused the plaintiffs' monthly annuity to decrease. In our view, like *Kraus* and *Felt*, the application of the amendment to plaintiffs amounted to a change in the terms of their contract with the pension system and directly diminished their benefits under the contract.

Defendant cites several cases to argue that plaintiffs have failed to demonstrate a protected property interest under article XIII, section 5, including: *Peters v. City of Springfield*, 57 Ill. 2d 142, 311 N.E.2d 107 (1974); *Kerner v. State Employees' Retirement System*, 72 Ill. 2d 507, 382 N.E.2d 243 (1978); *Hannigan*, 240 Ill. App. 3d 1065, 608 N.E.2d 396; *Sellards v. Board of Trustees of the Rolling Meadows Firemen's Pension Fund*, 133 Ill. App. 3d 415, 478 N.E.2d 1123 (1985); *Sklodowski*, 182 Ill. 2d 220, 695 N.E.2d 374; *People ex rel. Illinois Federation of Teachers v. Lindberg*, 60 Ill. 2d 266, 326 N.E.2d 749 (1975); and *McNamee v. State*, 173 Ill. 2d 433, 672 N.E.2d 1159 (1996).

*Peters* is distinguishable from the instant case. In *Peters* the plaintiffs contended that an ordinance reducing the mandatory retirement age of its firemen from 63 to 60 unconstitutionally diminished their pension benefits in violation of section 5 of article XIII. The court disagreed, holding that the reduced retirement age merely had an indirect impact on pension benefits. In *Peters*, the pension formula did not fix the firemen's age and service annuity at a particular age. Rather, a fireman's monthly pension was calculated as " '1/2 the monthly salary attached to the rank held by him in the fire service at the *date of his retirement*.' " (Emphasis added.) *Peters*, 57 Ill. 2d at 150, quoting Ill. Rev. Stat. 1971, ch. 108½, par. 4—109. Here, in contrast, the plaintiffs' age and service annuity before Public Act 86—272 were fixed at a specific age—namely, 63. Ill. Rev. Stat. 1987, ch. 108½, par. 5—128. In *Peters*, the firemen's pension fund formula was worded in general terms with salary and length of service acting as variables in the formula. In the instant case, however, the annuity depended on the plaintiffs' age and service at age 63, where the length of service was fixed and not variable. Unlike *Peters*, the amendment in this case did not create a mere incidental effect on pension calculations but, rather, directly changed a fixed variable in the pension formula.

*Kerner, Hannigan* and *Sellards* are also distinguishable. In these cases, the provisions or conditions that plaintiffs objected to already existed when the plaintiffs' benefits vested and the court therefore found no constitutional violation. See *Kerner*, 72 Ill. 2d at 514-15 (termination of pension benefits due to felony convictions was a condition that already existed when plaintiffs' benefits vested and did not change, let alone diminish, terms of the contract); *Hannigan*, 240 Ill. App. 3d at 1073 (employee's benefits that were reduced by amount of disability payments previously received did not violate pension protection clause because the reduction provisions were already in effect when plaintiffs' benefits vested); *Sellards*, 133 Ill. App. 3d at 417 (employee's benefits that were reduced by amount of workers' compensation payments previously received did not violate article XIII, section 5, because the reduction provisions were already in effect when plaintiff's benefits vested). Thus, in *Kerner, Hannigan*, and *Sellards*, there was no change in the pension formula whereas, here, the formula has been directly affected and modified to reduce plaintiffs' benefits.

Finally, *Sklodowski, Lindberg* and *McNamee* are inapposite because those cases involved allegations that plaintiffs were entitled to a specific level of pension funding or to secure funding mechanisms. The courts in those cases held that the pension protection clause cre-

ates enforceable contractual rights only to receive benefits, not to control funding.

Plaintiffs also contend that they were entitled to a predeprivation hearing. We agree.

■ Due process requires that deprivation of life, liberty or property be preceded by notice and opportunity for hearing that is appropriate to the nature of the case. *Goss*, 419 U.S. at 579, 42 L. Ed. 2d at 737, 95 S. Ct. at 738. "At the very minimum, *** interference with a protected property interest must be given some kind of notice and afforded some kind of hearing." (Emphasis omitted.) *Goss*, 419 U.S. at 579, 42 L. Ed. 2d at 737, 95 S. Ct. at 738. We are persuaded by plaintiffs' arguments that the legislature intended that a predeprivation hearing be held based on section 5—189 of the Pension Code. This section gives the Board power to:

> "authorize the payment of any annuity, pension, or benefit granted under this Article or under any other Act relating to police pensions, heretofore in effect in the city which has been superseded by this Article; to increase, reduce, or suspend any such annuity, pension, or benefit whenever any part thereof was secured or granted or the amount thereof fixed, as the result of misrepresentation, fraud, or error; *provided, the annuitant, pensioner or beneficiary concerned shall be notified and given an opportunity to be heard concerning such proposed action*." (Emphasis added.) Ill. Rev. Stat. 1989, ch. 108½, par. 5—189.

■ Statutory language is usually the best indicator of the legislature's intent. *Collins*, 155 Ill. 2d at 111. Such language is to be given its plain or ordinary and popularly understood meaning. If the words in the statute are plain and unambiguous, they must be given effect as they appear in the statute. *Kozak v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 95 Ill. 2d 211, 215, 447 N.E.2d 394 (1983). We note that the words in section 5—189 mandate a hearing for a "proposed action" and not an action already taken by the Board. The Board has also admitted in its brief that the 3% cancellation was required due to error by the Board. According to the plain terms of the statute, we believe the legislature contemplated a predeprivation hearing when a beneficiary's pension is reduced due to error by the Board. Since the plaintiffs were not afforded a predeprivation hearing, the application of Public Act 86—272 unconstitutionally diminished their benefits without due process of law.

## II. SERVICE CREDIT

■ Although plaintiffs initially devote most of the argument in their brief to the contention that the Board's application of Public Act 86—272 was unconstitutional, the plaintiffs also set forth an alterna-

tive argument urging this court to find the amendment constitutional. In lieu of the 3% increases accrued prior to the plaintiffs' retirement dates, plaintiffs argue that the Board should instead credit plaintiffs for all of their active service during the time they made no contributions to the system (from age 63 to January 1, 1988).

Defendant initially argues that plaintiffs' claim for service credit is simply based on statutory interpretation without constitutional implications and, as such, is not entitled to review under section 1983. 42 U.S.C. § 1983 (1994). Our review of the record establishes that count I of plaintiffs' complaint in the instant case does allege that the Board acted contrary to the Pension Code by failing to credit plaintiff with service "for all periods during which he performed service in his position." The trial court discussed this claim in its October 1998 ruling but did not predicate its decision on this claim. In its decision granting plaintiffs' motion for summary judgment, the trial court wrote:

> "[T]he amendments should not apply to plaintiffs at all. *** Plaintiffs' motion for summary judgment is granted, but only to the extent that the provisions of P.A. 86—272 do not apply to them."

Although defendant contends that this claim is based on statutory interpretation without constitutional implications, in our view, if plaintiffs' claim that their entitlement derives from the Pension Code is correct, the constitution could be implicated.

Section 5—132 of the Pension Code requires that the base annuity be calculated from a percentage of the final average salary. The final average salary, in turn, is based upon the four highest consecutive years within the last 10 years of "service" before withdrawal. Ill. Rev. Stat. 1989, ch. 108½, par. 5—132.

Section 5—212 governs what constitutes creditable service. Ill. Rev. Stat. 1989, ch. 108½, par. 5—212. The statute counts "all periods during where [a policeman] performed the duties of his position" as well as periods such as vacation, leave of absence with whole or part pay, and leave of absence when the policeman was engaged in military or naval service. Ill. Rev. Stat. 1989, ch. 108½, par. 5—212. Although the statute does not address whether a police officer receives credit for active duty when he does not contribute to the pension fund, the statute does provide that a police officer must contribute to the fund in order to receive service credit in case he is passed over on any eligible list from an entrance exam because he was engaged in military or naval service. Thus, there is language in the statute itself that links creditable service to contribution.

Two cases cited by defendant indicate that the legislature did not

intend that police officers receive service credits for periods during which they performed the duties of their positions but made no corresponding contributions to the pension fund. In *Collins*, the court examined provisions of the firemen's pension code and articles of the entire Pension Code and concluded that the legislature intended retirement annuity service credits to be conditioned on payment of contributions. Moreover, according to *Collins*, "[t]he fund created for policemen in the City of Chicago contains provisions that mirror those of the Firemen's Fund exactly." *Collins*, 155 Ill. 2d at 118.

The second case, *United States v. City of Chicago*, 978 F.2d 325 (7th Cir. 1992), involved the same defendant retirement board and an interpretation of the same article of the Pension Code as the instant case. In *United States*, the City of Chicago was required to pay damages of back pay and make retroactive seniority adjustments for victims in an underlying employment discrimination action. In order to fund the retroactive seniority credit, the city was to deduct employee contributions from plaintiffs' back-pay awards. However, the back-pay contributions were not sufficient to fully fund the level of retroactive benefits sought. The Board argued that it could only grant full seniority credit after receiving full employee contributions based on full annual salary. *United States*, 978 F.2d at 328-29. The court accepted the Board's argument, holding that provisions of the policemen's pension code:

> "reveal a fundamental policy that the Board may not grant full seniority credit without full pension contributions by the employees or on the employee's behalf. This interpretation naturally comports with the fiduciary duty of the Board to the beneficiaries of the pension fund. To grant full pension benefits without receiving full pension contributions would threaten to deprive all beneficiaries of their rightful share of the benefits." *United States*, 978 F.2d at 331.

In light of the "fundamental policy" (*United States*, 978 F.2d at 331) that service credit for a retirement annuity may not be granted without contribution under *United States* and *Collins*, we hold that the plaintiffs were not entitled to credit for years of service where the plaintiffs made no corresponding contribution.

## III

### Claims by 16 Plaintiffs

■ Plaintiffs contend that application of the trial court's October 1, 1998, decision to 16 plaintiffs who suffered no reduction in benefits is erroneous because binding them by the decision will cause these 16 class members to lose the increased benefits they have been granted. Relative to plaintiffs' contention, the actuarial report establishes that,

unlike the 45 plaintiffs who suffered immediate reductions in their pensions in September 1991 as a result of Public Act 86—272, the 16 class members benefitted somewhat from the application of Public Act 86—272. The actuarial report also indicates that about four-fifths of these 16 class members continued to work after March 1988. All members of this subclass made contributions to the pension fund ranging from $975 to $6,366.

For members of this subclass, the actuarial report in the record indicates a difference between the present value of revised pension benefits and the present value of recalculated "full service" pension benefits as of September 1, 1991. This difference is reported by the actuary as "variable losses" to these 16 class members. Plaintiffs contend that contributions made by class members from January 1, 1988, to the actual dates of retirement constitute new consideration for additional benefits and that these benefits are constitutional rights that are vested pursuant to article XIII, section 5, of the Illinois Constitution. Ill. Const. 1970, art. XIII, § 5. In our view, plaintiffs' contention is well founded. See *Taft*, 133 Ill. App. 3d at 572, 479 N.E.2d at 35; *Gualano*, 139 Ill. App. 3d at 459, 487 N.E.2d at 1052.

Thus, while we conclude that the trial court did not err, in part, in granting summary judgment on October 1, 1998, to 45 of the plaintiffs whose benefits were diminished as the Board's application of Public Act 86—272 deprived them of a constitutionally protected property interest in pension benefits without due process of law, we also conclude that the trial court erred, in part, in its refusal to reconsider the October 1, 1998, order and by the court's refusal to rule that the order was not applicable to the 16 class members who received increases in their pensions benefits.

Accordingly, we affirm that part of the trial court's October 1, 1998, grant of summary judgment for 45 members of plaintiffs class whose benefits were reduced, and we reverse the trial court's denial of reconsideration of the October 1, 1998, order and the trial court's refusal to enter an order limiting the application of the October 1, 1998, grant of summary judgment to 45 class members whose benefits were diminished. This cause is remanded to the trial court for the entry of orders accordingly and for the determination of the plaintiffs' rights and benefits.

Affirmed in part and reversed in part; cause remanded with directions.

COHEN, P.J., and McNULTY, J., concur.